JONATHAN W. POND *vs.* PHILO H. SKIDMORE AND ANOTHER.

*A* and *B* owned certain personal property jointly. A creditor of *A* attached his interest and afterwards a creditor of *B* that of *B*. In a controversy for the possession of the property, it was held that questions of fraud could not be raised between the attaching creditors, as they were not co-creditors attaching the same estate, but creditors of different debtors, attaching different estates.

The property consisted of the furniture of a summer hotel upon a small island. The attachment of *A's* interest was made in the winter, when the island was uninhabited and when it was very difficult to remove the property from it. The

officer entered, attached the property, and left it locked up in the hotel, posting a notice of the attachment on the principal door. He afterwards visited the island from time to time to see that the property was safe, until the defendant, two months after, attached the interest of *B* in the property and took possession of a large portion of it. In trover brought by the first officer, the judge, after instructing the jury as to the necessity of an officer taking and holding possession, left it to them to determine upon all the evidence whether the plaintiff in the circumstances had acted reasonably and properly in the course which he had taken to obtain and hold possession of the property. *Held to be correct.*

The rule requiring the removal of attached property by the officer is one of policy, to prevent fraud, and does not apply where the possession is otherwise openly and notoriously changed.

No demand was necessary before bringing the suit.

A mortgage not recorded until after an attachment of the mortgaged property, where the delay has been unreasonable and is unexplained, is not good against the attaching creditor.

TROVER, with trespass *de bonis asportatis;* brought to the Superior Court in New Haven County, and tried to the jury, on the general issue, with notice, before *Sanford, J.*

Upon the trial the plaintiff offered evidence to prove the following facts. That one Julius A. Preston, of New Haven, on the 24th of January, 1868, placed in his hands as deputy sheriff, for him to serve, two writs of attachment in his favor against one Edwin Barnes, and directed him to proceed to Charles Island in Long Island Sound, near the town of Milford, and attach the personal property on the island, which Barnes owned jointly with Preston, the plaintiff in the suits; that Charles Island had been occupied by Preston and Barnes for two or three seasons, as a sea-shore place of resort, and upon it was a hotel, and two or three small buildings and appurtenances such as are usual to a place of that sort, and that it was only occupied during the warm weather, and that no person ever remained on the island in the cold weather, and that the hotel and out-houses were then locked up and unoccupied and the island deserted, and had been since the 1st of October, 1867; that about the 1st of October, 1867, Barnes, who had previously resided in New Haven, left the state and removed to Virginia with no intention of returning, and had never since returned; that Preston told the plaintiff where he thought he would find the keys to the houses,

Pond v. Skidmore.

and directed him to take possession of the buildings and lock them up, and keep the possession after he had attached the goods, and that Preston had never been at the island since; that the plaintiff in pursuance of these instructions went to Milford and thence to Charles Island, which is about two miles off the shore of Milford, and about twelve miles from New Haven by the usual route; that he found no person on the island, and nothing to indicate that any persons lived there, and entered only one or two of the smaller buildings, the main building being fastened; that he did not find the keys to the buildings that night, but attached the property, so far as was possible without entering all the buildings, and posted on the door of the main building a notice of the attachment, and left the island to return in the morning.

To the introduction of the evidence of the acts of the plaintiff that day upon the island, and the notice, the defendants objected, on the ground that they were nugatory and constituted no step in attachment or service upon either of the writs of attachment. The plaintiff claimed that the evidence was admissible as tending to show that he took possession of the property, in connection with other evidence which he should offer, and the notoriety which attended his acts under the writ; and the court admitted the evidence for that purpose.

The next morning, January 25th, 1868, the plaintiff had placed in his hands the writ of John B. Carrington against Preston, with instructions to attach all Preston's interest in the property, and he immediately started for Charles Island, but on account of the tide could not reach it till towards evening, when he succeeded in doing so, and having a key furnished by a locksmith, he opened the north door, and entered the main building, and attached the property on Carrington's writ, and locked the doors and went out, and posted the following notice on the north door, which was the main entrance to the building, and returned to New Haven. The notice was as follows :—

"NOTICE. This will inform all persons that I have this day, by virtue of a writ of attachment to me directed and

Pond v. Skidmore.

delivered, in favor of John. B. Carrington, of the town and county of New Haven, and against Julius A. Preston of said town of New Haven, attached all the right, title and interest of the said Preston in and to all and singular the personal property in and about this house and other buildings, and the same is now in my lawful custody and possession. Dated at Charles Island, this 25th day of January, A. D. 1868. Attest, J. W. POND, *Sheriff's Deputy.*"

The defendant objected to the admission of this evidence on the same grounds as before, but the court admitted it.

On the 7th of February, 1868, the plaintiff again started with his assistants for the island, and went to Milford, and from there started with a team for the island, but found it impossible to get there on account of the tide. The island is only accessible from the land by a bar which is bare for a short period at low tide. The next day, February 8th, the plaintiff again made the attempt, and by walking over the bar, which was heavily loaded with ice, reached the island and found every thing safe and just as he had left it. He then found the keys to the different rooms in the house, and unlocked the doors and entered all the buildings, and made a complete inventory of all the personal property, and securely locked all the rooms and doors, putting the keys in his pocket, fastening the north door with a brace on the inside. He then posted notices of his attachment on all the doors to the buildings, and left the island. He afterwards made return of his doings on the writs, and duly returned them to the court. On one or two occasions when it was feasible, between that time and the 14th of March, he went to the island and found every thing undisturbed, and he kept all the keys of the buildings until he sold the property not carried away by the defendants on Carrington's execution.

On the 14th of March, 1868, the plaintiff received another writ of attachment, in favor of D. M. King against Preston, with which he went to the island, and attached the same property subject to the preceding attachment, and found every thing safe and undisturbed, and posted a notice as before.

To this evidence of the plaintiff's acts, and to the notice, the defendants objected, but the court admitted it.

On the 19th of March, 1868, the plaintiff again examined the premises, and found every thing safe and undisturbed, and on the 23d of March he again visited the island and found every thing safe and undisturbed, except that one door in the main building had blown open in a high wind which had prevailed, and some one had roasted some oysters in a little outbuilding, the door of which was partly open. These he again securely fastened and returned to New Haven. The next day, having been informed of the acts of the defendants, he in the afternoon went again to the island and found that the defendants were engaged in the removal of the property to a barge, which had been towed there by a tug the night before. He forbade the removal of any of the property, but the defendants removed that which had been placed on the barge, and this suit was brought for the property so removed.

The plaintiff had not left any copy in the town clerk's office of Milford, describing the personal property attached, the property being for the most part household furniture. The plaintiff also claimed to have proved that Skidmore, one of the defendants, had been informed of the attachments, and knew all that the plaintiff had done in the premises, and had been watching for an opportunity to remove the property from the island, and just after a storm, which was the breaking up of winter, had rendered the island accessible, had procured writs of attachment in favor of himself and another person, and on the night of the 23d of March, 1868, procured a steam tug to tow a barge to the island, in which to remove the property secretly, and that he succeeded in removing thus the articles sued for.

The plaintiff also claimed to have proved that, from the time of the attachment down to the night that the defendants went to the island in the steam tug, the property could not have been removed by means of any water transportation, and that to have attempted to do it by land carriage would have been attended with great hazard, and with large expense,

VOL. XL.—28

wholly disproportionate to the value of the property; that the bar was covered with large and rough cobble stones and ice in the winter, rendering its passage difficult and dangerous and at times impossible.

The defendants claimed to have proved that, on the morning of the 24th of March, 1868, about sunrise, they visited the island in the barge and tug, and found one door of the main building open; that they then proceeded to load the barge with the household furniture and personal property, and continued doing so until the plaintiff arrived on the island with his assistants about five o'clock in the afternoon of the same day, and forcibly compelled them to desist.   The defendants claimed the right to take the goods by virtue of a writ of attachment in favor of the defendant Skidmore, against Barnes, upon which the def ant Sanford was deputed as an indifferent person to serve the same, Skidmore acting as his assistant in making the service.   All the goods embraced in this suit were described in Sanford's return.

The defendants offered in evidence, the plaintiff objecting, a mortgage of Preston's interest in the island and in all the personal property on it, to Skidmore, executed by Preston, dated April 15th, 1868, but not recorded until after the attachment made by the plaintiff on the Carrington writ.   The plaintiff claimed that the mortgage was void as against an attaching creditor, because it was not recorded until after the attachment, and for other reasons not now important. The defendants claimed that it was a valid mortgage in all respects, and asked the court so to charge the jury.   The court did not so charge, but charged them that the mortgagee had a reasonable time within which to cause his mortgage to be recorded, and that it was a question of fact for them to determine whether more than a reasonable time had elapsed or not, under all the circumstances of the case.

The defendants further claimed to have proved that Charles Island in good weather was at all times accessible by boat, and that all the furniture might have been removed easily and cheaply by water between the 25th of January and the 24th of March, and that the island was accessible by land at·

low tide over the bar, although it was rough, and that a good yoke of oxen at low tide could draw a ton over the bar, and that land carriage would not have proved very expensive or seriously injurious to the furniture; and that after the 24th of March the plaintiff kept a watchman continually on the island and in possession of the goods remaining there, until the 13th of June, when they were sold on the Carrington execution. The plaintiff claimed to have proved that the goods could not have been removed by water until the very day that the defendants attempted to remove them, and that he had kept the watchman on the island after the 24th of March because he had reason to fear further depredations from the defendants.

The defendants claimed, and asked the court to charge the jury, that the plaintiff's attachment was invalid when he made it, but if ever effective, it had become inoperative at the time when the defendants took the goods in suit; but the court refused so to charge, but did charge the jury that, as it was only by virtue of the interest which the plaintiff acquired by his writ of attachment in the Carrington suit, and his liability over to Carrington, that he could maintain his suit, it became a material question in the case whether it was a legal and valid attachment; that the general rule of law is, that to enable an officer to perfect an attachment of personal property, and retain his lien upon it, he must remove it from the possession of the debtor and keep it in his own, but that the rule requiring a removal of the goods was not of universal application; that the officer must take possession, and to preserve his lien he must retain either the actual or constructive possession of the property; that an attachment levied upon the household furniture of a person having a family, and used by him in housekeeping, would be valid without any removal of the same, when such removal might be attended with injury, by the officer completing the service of his attachment and lodging in the town clerk's office a copy thereof with his return, within the time required by statute, and that the debtor might in that case remain in possession; that an attachment of household furniture might

be good, without returning to the town clerk such copy, if the officer takes and retains the possession, and thus preserves his lien; that he must do what is reasonable and proper for the preservation of his lien, and to prevent the debtor and others from taking the property from him. And the court left it to the jury to determine, upon all the evidence before them, whether the plaintiff made a lawful attachment, and retained his lien by an actual or constructive possession, and in view of all the circumstances had acted reasonably and properly in maintaining and keeping the possession of the property until it was removed by the defendants. The court also instructed them that, if they should find that the plaintiff's attachment was good and valid, then the defendants had no right to take the property out of his hands by virtue of their writ of attachment; but if not, then the defendants had the right to take it, there being no question that the process under which they were acting was a legal and valid one.

The defendants also offered evidence to prove, and it was not denied, that no demand was made of either of the defendants for the goods before the commencement of the suit, and claimed and asked the court to instruct the jury that without such demand there could be no recovery. But the court instructed the jury that if the defendants illegally took the property no such demand was necessary.

The court also instructed the jury that the defendants would be liable for only half the value of the goods taken, not exceeding the balance due on the Carrington execution.

The jury returned a verdict for the plaintiff, and the defendants moved for a new trial for error in the rulings and instructions of the court and in the refusal to give the jury the instructions requested.

*Sanford,* in support of the motion.

*Doolittle,* contra.

CARPENTER, J. The property in question was owned jointly by Julius A. Preston and Edwin Barnes. The plaintiff claims

a lien on Preston's interest therein, and a right to the possession, by virtue of a writ of attachment, served by him in favor of J. B. Carrington against Preston. The defendants claim a lien on Barnes's interest by virtue of a writ of attachment in favor of the defendant, Skidmore, against Barnes. The necessity for a legal controversy over it is not very apparent. It is obvious that the interest of each owner might have been attached and appropriated to the payment of his debts, without prejudice to the creditors of the other owner. The defendant Skidmore, instead of placing his writ in the hands of the plaintiff, to be by him served by attaching Barnes's interest, chose to employ another officer, and to inaugurate a contest for the possession of the property. That he took the property described in the declaration is not denied. That he had a legal right to do so is also admitted, unless it was lawfully attached and held by the plaintiff. Whether the plaintiff acquired and retained a lien by attachment is the principal question in the case; and that depends mainly upon the question of possession. It is agreed that the property, when attached, was not removed. The plaintiff claimed that its removal was not feasible; that Barnes had gone to Virginia and left the property in the possession of Preston; that Preston had surrendered the possession to him; and that he had the exclusive possession of the goods at the time they were taken by the defendants. These claims were controverted, to some extent, by the defendants, and the court left it to the jury "to determine, upon all the evidence before them, whether the plaintiff made a lawful attachment, and retained his lien by an actual or constructive possession, and in view of all the circumstances had acted reasonably and properly in maintaining and keeping the possession of the property until it was removed by the defendants." The jury, by their verdict, found that the property was lawfully attached, that the lien thereby created existed at the time the property was taken, and that, under all the circumstances, the plaintiff had acted reasonably and properly. In other words, they found that the plaintiff took and retained the possession of the goods.

There was no error in the charge of the court. The legality of the attachment and the continuance of the lien depended entirely upon a question of fact, and that question was properly submitted to the jury. The " constructive possession " evidently related to such possession as the officer had when not actually present with the property, and in that sense the term was properly used.

That personal property may be lawfully attached, without removal, where the officer takes and retains the actual and exclusive possession, is too clear for argument. *Mills* v. *Camp*, 14 Conn., 219. The rule requiring a removal is a rule of· policy, for the prevention of fraud, and does not apply when the possession is otherwise openly and notoriously changed.

It will be observed that no question of fraud is or can be involved in this branch of the case, inasmuch as the same estate, Preston's interest in the property, is not attached by the defendants. It is not therefore a controversy between two creditors of Preston, but is a controversy between creditors of different parties, and relates solely to the possession of the property.

It seems that the defendant Skidmore claimed a right to the possession of the property in dispute, by virtue of a mortgage deed from Preston to him. The deed was dated April 15th, 1867, but was not recorded until after the plaintiff's attachment, which was on the 25th day of January, 1868. *Primâ facie* the delay was unreasonable. As no reason or excuse was shown for the delay it is manifest that the deed was not recorded within a reasonable time. As against Carrington, therefore, it was inoperative and void, irrespective of the questions relating to the sufficiency of the description and the situation of the property.

The defendants claimed on the trial below " that no demand was made of either of the defendants for the goods before the commencement of this suit, and claimed and asked the court to instruct the jury that without such demand there could be no recovery." The court however instructed the jury that if the defendants illegally took the property no

such demand was necessary prior to bringing the suit. The charge on this point was clearly right, and is not in conflict with the decision of this court in *Sanford* v. *Pond*, 37 Conn., 589.

We do not advise a new trial.

In this opinion the other judges concurred.

*Note.* The foregoing case was argued at the meeting of the judges at Hartford in June, 1873, and Judge PHELPS, who had been elected a few days before by the General Assembly then in session, sat with the court.