FARMERS AND MECHANICS SAVINGS BANK *v.* VINCENT
A. GAROFALO III ET AL.
(14236)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and BORDEN, Js.

Argued May 28—decision released July 30, 1991

*David L. Gussak,* for the appellant (defendant the Money Store/Connecticut, Inc.).

*Jeffrey M. Krupnikoff,* for the appellee (defendant Lyon and Billard Company).

PETERS, C. J. The principal issue in this appeal is whether, under General Statutes § 52-285,[1] an attachment lien on real property accrues and becomes effective as of the date it is signed by the issuing authority or as of the date it is lodged in the town clerk's office. In a foreclosure action brought by the plaintiff, Farmers and Mechanics Savings Bank, the proceeds of the sale of property in East Hampton owned by the named defendant, Vincent A. Garofalo III, generated insufficient funds to pay remaining junior lienholders in full. The trial court determined that the claim of the defendant Lyon and Billard Company (Lyon & Billard), a judicial lien creditor, should take priority over the claim of the defendant the Money Store/Connecticut, Inc. (the Money Store), a junior mortgagee. The Money Store appealed this adverse judgment to the Appellate Court

[1] "[General Statutes] Sec. 52-285. ATTACHMENT OF REAL ESTATE. Real estate shall be attached by the officer by leaving in the office of the town clerk of the town in which it is situated a certificate that he has made such attachment, which shall be endorsed by the town clerk with a note of the precise time of its reception and recorded at length in the land records of such town; and such attachment, if completed as hereinafter provided, shall be considered as made when such certificate has been so lodged. The certificate shall be signed by such officer, shall describe the land attached with reasonable certainty and shall specify the parties to the suit, the authority issuing the writ, the court to which the process is returnable and the amount of damages claimed; and, unless the service is so completed, such estate shall not be held against any other creditor or bona fide purchaser. No such certificate left in the town clerk's office for record shall have the effect of the notice of action pending provided for in section 52-325."

and we transferred the appeal to this court pursuant to Practice Book § 4023. We reverse.

The relevant facts are undisputed. The foreclosure proceedings initiated by the plaintiff generated the sum of $16,270.31 to be disbursed following payment of the named defendant's debt to the plaintiff. The Money Store relied on its recorded mortgage deed for its claim to the remaining sale proceeds, while Lyon & Billard relied on its attachment and the subsequent judgment lien relating back to the attachment for its claim of priority.[2]

The parties perfected their respective liens in the following sequence. Lyon & Billard's prejudgment remedy attachment order was signed by a judge on April 21, 1988, and delivered to a sheriff on April 28, 1988. The Money Store's mortgage was executed on April 29, 1988. Lyon & Billard's certificate of attachment was recorded on the East Hampton land records on May 2, 1988.[3] Finally, the Money Store's mortgage deed was recorded on the East Hampton land records on May 4, 1988.

The trial court accepted Lyon & Billard's contention that an attaching creditor's rights accrue upon a judge's signing of an attachment, and therefore did not consider Lyon & Billard's alternate claim that its rights accrued upon delivery of the writ of attachment to the sheriff. In an articulation of its supplemental judgment, the court stated that attachments accrue "from the date a Judge signs the prejudgment remedy, provided the attaching creditor delivers it to the sheriff within a reasonable time and the sheriff records and serves within a reasonable time." The court found that Lyon

[2] The claims of the competing lienholders each exceed the moneys held on deposit by the court.

[3] Lyon & Billard subsequently obtained a judgment on its separate action against Garofalo on May 15, 1989.

& Billard's attachment order had been signed before execution of the Money Store's mortgage deed and that delivery and recording of the attachment order had occurred within a reasonable time. Because it concluded that Lyon & Billard's judgment lien related back to the date of its attachment and, therefore, took priority over the mortgage lien of the Money Store, the court awarded the remaining sale proceeds to Lyon & Billard.[4] Since it rejected the argument of the Money Store that the priority of an attachment lien dates only from the date of its recording, the trial court did not rule on the question whether the Money Store had recorded its mortgage deed within a reasonable time.

On appeal, the Money Store renews its claim that an attachment lien does not accrue, at least as against innocent third party claimants, until the lien is recorded upon the land records. If we agree with this contention, the Money Store urges us also to resolve in its favor the question of the timeliness of its recording of its mortgage deed. We agree with the Money Store's first claim, but remand the case for an evidentiary hearing to determine whether the Money Store recorded its mortgage within a reasonable time.

I

The right to attach property is purely statutory. *Connecticut* v. *Doehr,*   U.S.   , 111 S. Ct. 2105, 2115, 115 L. Ed. 2d 1 (1991). General Statutes § 52-285 identifies the requirements for attaching real property in this state and is controlling on the issue of when an attachment begins to accrue. That statute provides in rele-

---

[4] General Statutes § 52-380a (b) provides in relevant part: "From the time of the recording of the judgment lien certificate, the money judgment shall be a lien on the judgment debtor's interest in the real property described. If, within four months of judgment, the lien is placed on real property which was previously attached in the action, *the lien on that property shall hold from the date of attachment* . . . ." (Emphasis added.)

vant part: "Real estate shall be attached by the officer by leaving in the office of the town clerk of the town in which it is situated a certificate that he has made such attachment, which shall be endorsed by the town clerk with a note of the precise time of its reception and recorded at length in the land records of such town; and such attachment, if completed as hereinafter provided, shall be considered as made when such certificate has been so lodged." Because attachments did not exist at common law and because tying up a debtor's property prior to litigation of the validity of the creditor's claim is a "harsh remedy"; 1 R. Shinn, Attachment and Garnishment (1896) § 402, p. 743; see also *Connecticut* v. *Doehr,* supra, 2112–13; we have construed our attachment statutes strictly. *Atlas Garage & Custom Builders, Inc.* v. *Hurley,* 167 Conn. 248, 257–58, 355 A.2d 286 (1974); *Hubbell* v. *Kingman,* 52 Conn. 17, 19 (1884).

The text of § 52-285 is silent on whether an attachment recorded within a reasonable time of its execution relates back to that earlier date as the effective date of its accrual. This court has never considered whether the legislature impliedly incorporated a relation-back principle therein.

The Money Store urges us not to interpolate a provision for pre-recordation accrual into § 52-285. It relies on our oft-stated rule that, absent statutory ambiguity, we ordinarily assume that we need not elaborate on the intention of the legislature because its intention is presumed to have been expressed in the words of the statute. *Furstein* v. *Hill,* 218 Conn. 610, 622, 590 A.2d 939 (1991); *Anderson* v. *Ludgin,* 175 Conn. 545, 552, 400 A.2d 712 (1978). " 'Where the language of the statute is clear and unambiguous, the courts cannot, by construction, read into statutes provisions which are

not clearly stated.' " *Harlow* v. *Planning & Zoning Commission,* 194 Conn. 187, 193, 479 A.2d 808 (1984), quoting *Point O'Woods Assn., Inc.* v. *Zoning Board of Appeals,* 178 Conn. 364, 366, 423 A.2d 90 (1979).

The Money Store's contention that we should construe § 52-285 to preclude an accrual period for attachment liens finds support not only in the text of the statute but also in the established policy of protecting the integrity of our land records. Statutory requirements for the recording of certificates of attachment in the town clerk's office, like other recording requirements, serve to protect bona fide purchasers and mortgagees from secret encumbrances on real property. Allowing relation back to some time prior to the moment of recording of an attachment would inevitably encroach upon the reliability of this system. No search of the record title, no matter how painstaking and accurate, could protect a potential purchaser or mortgagee from an attachment that had been issued, but not yet recorded. "The policy of [the recording] system, which is rigidly adhered to, requires that the record shall disclose, as nearly as may be, the true state of the title and the nature and extent of the incumbrance upon it." *Hubbell* v. *Kingman,* supra, 20.

To counter these persuasive arguments for construction of § 52-285 to preclude an accrual period for attachment liens, Lyon & Billard urges us to look beyond the confines of that statute itself. Lyon & Billard maintains that § 52-285 should be interpreted to afford to judicial liens the same treatment as that afforded to recorded mortgage deeds pursuant to General Statutes § 47-10[5]

---

[5] "[General Statutes] Sec. 47-10. DEEDS TO BE RECORDED. No conveyance shall be effectual to hold any land against any other person but the grantor and his heirs, unless recorded on the records of the town in which the land lies. When a conveyance is executed by a power of attorney, the

and to recorded mechanic's liens pursuant to General Statutes §§ 49-34[6] and 49-33 (b).[7] These statutes have been held to allow for a period of accrual prior to the actual recording of the instrument, so long as recordation occurs within a reasonable time. We find these analogies unpersuasive.

Our recordation statute, now § 47-10, has consistently been interpreted as providing for a reasonable period within which to record a deed of conveyance. That construction finds support in its provision that no conveyance can be effective against subsequent innocent parties *"unless* recorded on the records of the town in which the land lies." (Emphasis added.) Id.[8] The use of the word "unless" as opposed to "until" connotes legislative recognition of the proposition that rights conveyed by a deed may effectively accrue a reasonable time prior to its actual recordation.[9] Since *Beers* v. *Hawley,* 2 Conn. 467, 469 (1818), construing prede-

power of attorney shall be recorded with the deed, unless it has already been recorded in the records of the town in which the land lies and reference to the power of attorney is made in the deed."

[6] General Statutes § 49-34 provides in relevant part: "CERTIFICATE OF LIEN TO BE RECORDED AND NOTICE GIVEN TO OWNER. . . . A mechanic's lien is not valid, unless the person performing the services or furnishing the materials, (1) within ninety days after he has ceased to do so, lodges with the town clerk of the town in which the building, lot or plot of land is situated a certificate in writing . . . ."

[7] General Statutes § 49-33 provides in relevant part: "MECHANIC'S LIEN. PRECEDENCE. RIGHTS OF SUBCONTRACTORS. . . .

"(b) The claim is a lien on the land, building and appurtenances or lot or in the event that the materials were furnished or services were rendered in the site development or subdivision of any plot of land, then on the plot of land and the claim takes precedence over any other encumbrance originating after the commencement of the services, or the furnishing of any such materials . . . ."

[8] A mortgage is considered a "conveyance" of land. *Second National Bank* v. *Dyer,* 121 Conn. 263, 267, 184 A. 386 (1936).

[9] This is in contrast to many states that automatically give priority to the party that records first and without notice of a prior unrecorded conveyance or lien. See, e.g., Cal. Civ. Code § 1214 (Deering 1990); N.Y. Real Prop. Law § 291 (McKinney 1989).

cessor statutes with similar texts, this court has permitted a mortgage deed, if recorded within a reasonable time of its execution, to take priority from the date of its delivery, even as to liens recorded prior to the recording of the deed but subsequent to its execution. *Apstein* v. *Sprow,* 91 Conn. 421, 99 A. 1045 (1917); *Hartford Building & Loan Assn.* v. *Goldreyer,* 71 Conn. 95, 99–100, 41 A. 659 (1898); *Goodsell* v. *Sullivan,* 40 Conn. 83, 85 (1873); see 1 Z. Swift, A System of the Laws of the State of Connecticut (1795) p. 308 ("every purchaser of land shall have a reasonable time to procure his deed to be recorded").

Because the wording of § 47-10 has remained in essentially the same form since the 1800s, we may presume legislative acquiescence in our interpretation of the mortgage lien statute. "[I]ts subsequent nonaction may be understood as a validation of that interpretation." *Phelps Dodge Copper Products Co.* v. *Groppo,* 204 Conn. 122, 134, 527 A.2d 672 (1987), quoting *Ralston Purina Co.* v. *Board of Tax Review,* 203 Conn. 425, 439, 525 A.2d 91 (1987). In contrast, no cases have interpreted § 52-285 as providing a reasonable time within which to record an attachment.

The mechanic's lien statute offers an even less compelling analogy for the construction of § 52-285. Although General Statutes § 49-34 allows a mechanic's lienor a ninety day grace period[10] within which to file a claim in the town clerk's office, General Statutes § 49-33 (b) expressly provides that the priority of the lien relates back to the date the work commenced or material was brought to the work site. The priority of such a lien over an intervening encumbrance has thus

---

[10] A mechanic's lienor has ninety days after the last services or materials have been furnished within which to lodge his claim at the town clerk's office. General Statutes § 49-34 (1).

resulted, since 1836, from direct statutory fiat.[11] See
Statute Laws of Conn., tit. LIX, § 1 (1839); see also
*Hartford Building & Loan Assn.* v. *Goldreyer,* supra,
99. While mechanic's liens and attachment liens are
both nonconsensual, the legislature's express allowance
for an accrual period in § 49-33 and its failure to pro-
vide for a similar period in § 52-285 is determinative
of the legislature's intent on this issue.

Despite the dearth of Connecticut support for its con-
tention that judicial liens relate back to accrue prior
to the moment of their recordation, Lyon & Billard
urges us to consider analogous rules of law in other
jurisdictions. Specifically, it calls to our attention Mas-
sachusetts General Laws, c. 223, § 66 (1985), which pro-
vides that an attachment will take effect from the time
when it was made if a copy of the attachment order
is recorded "within three days after the day when the
attachment was made." We find this reference unper-
suasive for three reasons. First, the Massachusetts
legislature expressly provided for an accrual period in
its attachment statute, while, as previously noted, the
Connecticut legislature did not. Second, the Massachu-
setts statute specifically states that an attachment is
"made" at some earlier point in time, apparently upon
the sheriff's return, while § 52-285 provides that an
attachment "shall be considered as made" when a cer-
tificate of attachment is left at the office of the town
clerk where the property is located and not a moment
earlier. Third, under chapter 223, § 66, an attachment
takes effect within three days after the day the attach-
ment is made "but attachments of land shall not be valid
against purchasers in good faith and for value 'except
from the time when the copy is deposited [in the regis-

---

[11] Such an accrual period for mechanic's liens is also recognized in numer-
ous other jurisdictions. See, e.g., Del. Code Ann. tit. 25, § 2718 (1989); Minn.
Stat. Ann. § 514.05 (West 1990); Pa. Stat. Ann. tit. 49, § 1508 (Purdon 1973).

try of deeds].' " *Hendricks* v. *Shaw,* 262 Mass. 284, 286, 159 N.E. 620 (1928). The latter section is consistent with § 52-285, which provides that only as of the moment the certificate of attachment is recorded upon the land records is the attachment sufficient to hold the estate attached against subsequent bona fide purchasers. See *Butchers' Ice & Supply Co.* v. *Bascom,* 109 Conn. 433, 436, 146 A. 843 (1929); see also Me. Rev. Stat. Ann. tit. 14 § 4454 (attacher has five days within which to record attachment, but "[a]ll recorded deeds take precedence over unrecorded attachments").

We therefore conclude that, under § 52-285, an attachment that is subsequently transformed into a judicial lien following a judgment on the underlying cause of action relates back, for purposes of determining priority, only to the moment when the certificate of attachment is left at the town clerk's office of the town where the property is located. Accordingly, Lyon & Billard's attachment took effect on May 2, 1988, and its judicial lien relates back to that date.

## II

Disposition of the issue of the effective date of Lyon & Billard's attachment does not suffice to establish the date when the Money Store's mortgage became effective against third parties. As noted above, the trial court found that the Money Store's mortgage was executed on April 29, 1988, and recorded on May 4, 1988, while Lyon & Billard's attachment was lodged at the town clerk's office on May 2, 1988. "[A] conveyance which is not recorded until after an attachment of the property conveyed is not good against the attaching creditor . . . if the delay in recording was unreasonable and is unexplained. *Pond* v. *Skidmore,* 40 Conn. 213, 222 [1873]; *Newtown Savings Bank* v. *Lawrence,* 71 Conn. 358, 364, 41 Atl. 1054, 42 id. 225 [1898]. But

a deed recorded in a reasonable time after delivery prevails over an attachment made after the delivery of the deed but prior to the recording of it; and what is a reasonable time is a question of fact for the trial court, and its finding is conclusive. *Goodsell* v. *Sullivan,* 40 Conn. 83, 85 [1873]." *Apstein* v. *Sprow,* supra, 423. Thus, in order to establish priority for its subsequently recorded mortgage, the Money Store must show that it recorded its deed within a reasonable time of its execution. The trial court, having ruled that the effective date of the Lyon & Billard attachment antedated the execution of the mortgage, did not reach this issue.

The Money Store acknowledges that it had the burden of proving that it recorded its mortgage deed within the reasonable time period required under § 47-10. It urges this court to hold that it satisfied this burden, as a matter of law, by recording on Wednesday, May 4, a mortgage deed, executed and delivered on Friday, April 29. Lyon & Billard contends, to the contrary, that the Money Store's failure to present evidence on this issue before the trial court automatically vests priority in favor of Lyon & Billard. We are unpersuaded that the Money Store should be penalized for the trial court's decision not to make a factual finding on the issue of reasonableness, when the record indicates that the Money Store apprised that court of the need for testimony in its motion for supplemental judgment.[12]

*Pond* v. *Skidmore,* supra, makes it clear that an unexplained delay in recording is unreasonable. The Money Store offered the following explanation for its delayed

[12] The Money Store's motion for supplemental judgment apprised the trial court that testimony would be required. At oral argument before this court, counsel for the Money Store informed us that he told the trial judge at short calendar that he would provide additional testimony if the court considered it necessary. The trial court did not ask for further evidence, but decided the case "on the papers."

recording. Because the closing on the mortgage took place late in the afternoon on Friday, April 29, 1988, recording on that day was impossible. It alleged that it sent the mortgage deed to the town clerk of East Hampton by ordinary mail by placing the deed in a mailbox sometime on Saturday, April 30. The record does not disclose why the deed did not arrive at the town clerk's office until Wednesday, May 4. In the interval, on May 2, Lyon & Billard had recorded its attachment.

Numerous cases have addressed the issue of what constitutes a reasonable time period for recordation of a real property deed so as to give a mortgagee or purchaser priority over intervening lienholders. Short delays ranging from thirty-one hours; *Goodsell* v. *Sullivan,* supra, 85; to one day; *Hartford Building & Loan Assn.* v. *Goldreyer,* supra; or to two days; *Apstein* v. *Sprow,* supra, 424;[13] have been held to be reasonable. By contrast, delays measured in months and years have been held to be unreasonable. *Pond* v. *Skidmore,* supra (eight months); *Rees* v. *Hemisphere Publishing Corporation,* 11 Conn. Sup. 403, 407 (1943) (four and one-half months); *Burgey* v. *Bochinski,* 16 Conn. Sup. 427, 428 (1950) (twelve years). These cases do not provide guidance, as a matter of law, about the reasonableness of a five day delay in recordation. " '[T]he length of time that is to be considered reasonable, has never been ascertained, and perhaps cannot be, and must be left according to the special circumstances of each case.' " *Beers* v. *Hawley,* supra, 471, quoting 1 Z. Swift, supra, p. 308.

The question of whether the Money Store's mortgage deed was recorded within a reasonable period of time

[13] Although the Money Store cites *Apstein* v. *Sprow,* 91 Conn. 421, 99 A. 1045 (1917), for the proposition that an *eleven day* delay has been called reasonable, the trial court therein determined that the relevant time period for prompt recordation dated not from the date of a deed's execution but from the date of its delivery to the grantee. Thus the relevant time frame was the two days between delivery and recordation. Id., 424.

must therefore be remanded for an evidentiary hearing. In undertaking its factual inquiry into reasonableness, the trial court should consider, inter alia, the appropriateness of a mortgagee's reliance on delivery of a deed to a recording office by ordinary mail when next-day guaranteed delivery service is now routinely available either through the postal service or through private delivery services.[14] The trial court should also be mindful that delays in the recordation of deeds necessarily impair the integrity of our recording system. Subsequent purchasers and creditors should be able to rely upon the accuracy of a title search without having to escrow funds in anticipation of delayed recordings.

The judgment is reversed and the case is remanded to the trial court for an evidentiary hearing in accordance with this opinion.

In this opinion CALLAHAN and COVELLO, Js., concurred.

SHEA, J., with whom BORDEN, J., joins, concurring. I agree wholly with Part I of the majority opinion, which holds that an attachment of real estate does not take effect until a certificate of attachment has been filed in the land records, as provided by General Statutes § 52-285. I also agree with the holding in Part II that the case must be remanded to the trial court for a determination of whether the delay in recording the Money Store's mortgage deed was reasonable, because that factual issue must be decided by the trial court rather than by this court.

---

[14] A procedural bulletin issued by the Connecticut Attorneys Title Insurance Company states that instruments should be recorded *"immediately* after delivery. Where unusual circumstances preclude same day recording, however, the . . . instruments should be recorded on the first business day following the date of the . . . transaction." (Emphasis added.) It further warns that "[f]rom the foregoing it is obvious that members may *not* mail . . . instruments to the town clerks' offices for recording." (Emphasis added.)

I disagree, however, that this court, in remanding the case for trial of such a factual issue, should point to certain factors that may be relevant to that determination, such as the availability of mail or delivery services more expeditious than ordinary mail, without mentioning others, such as the increased cost of such services and the customary practices followed by attorneys in the locality. The selective inclusion of such signposts accompanying the remand of a factual issue for decision by the trial court is likely to be viewed as indicating a predetermination of that issue by this court. We ought not thus to leave the appellate finger on the scales when we purport to remand for an impartial resolution of a factual issue the trial court has not previously determined.