[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Statement of the Case
In these related actions, each plaintiff claims possession of real property located at and known as 175 Amity Road in Woodbridge. By agreement, each plaintiff has filed a prayer for relief seeking a declaratory judgment. Appropriate amended pleadings have been filed and both cases were combined in one trial.
Facts
Frank and Katherine Perrotti are the owners of the property in question and on or about February 14, 1992, they leased the premises to Woodbridge Associates of Delaware Limited Partnership (hereinafter WALP). On May 1, 1992, a notice of the lease was recorded on the Woodbridge Land Records.
The WALP lease was subject to a lease dated February 8, 1969, CT Page 11025 in which the Perrottis leased the premises to the Brown Thomas Company, the latter subsequently assigning the same to Marvin Voloshin.
In 1993, Marvin Voloshin was in default of several of the leasehold terms and the Perrottis proceeded to terminate his leasehold interest. A Notice to Quit was served on him, ordering him to vacate on or before November 26, 1993. Subsequently, a Summary Process action was commenced and negotiations between the Perrottis, WALP and Marvin Voloshin resulted in a settlement. Under its terms, the Voloshin lease would be terminated and WALP's lease would be free and clear of encumbrances.
Before the settlement agreement was executed, a sublease dated May 1, 1990, was revealed. It showed Marvin Voloshin as sublessor and Bart Voloshin, his son, as sublessee. (It was not recorded until May 4, 1994.)
Marvin Voloshin had not disclosed the existence of a sublease and in fact had represented that no sublease existed as such, but that it had been created to permit Bart Voloshin to obtain a used car dealer license.
However, since the Department of Motor Vehicles (hereafter DMV) had issued a license to Bart Voloshin for these premises, WALP's proposed tenant was denied a license in April of 1993.
Having received assurances from Marvin Voloshin that there was really no sublease, on June 23, 1994, a settlement agreement was executed. In that agreement, Marvin Voloshin undertook to take steps to have Bart Voloshin's license revoked. He then entered into an agreement with the Perrottis which granted them and thus WALP, immediate possession of the premises.
WALP proceeded to prepare for marketing the premises and engaged various persons to enter onto the premises to make improvements, etc.
Bart Voloshin had alleged a valid sublease interest in 1993 and now claimed that he had further subleased the premises to his corporation, Woodbridge Motors, Inc. (hereafter WMI). It was this entity which had obtained the DMV dealer's license. No such sublease was produced at trial.
Issues
CT Page 11026
The issues before the Court are:
 1. The effect of the Martin Voloshin/Bart Voloshin sublease on WALP's lease;
 2. The status of the alleged Bart Voloshin/WMI sublease;
 3. The determination of which party is entitled to possession.
 I.
Service of a valid notice to quit terminates a tenancy.Messinger v. Laudano, 4 Conn. App. 162, 163 (1985.
Marvin Voloshin was served with a notice to quit on or before November 26, 1993. "Service of a notice to quit possession is typically a landlord's unequivocal act notifying the tenant of the termination of the lease." Housing authority v. Hird, 13 Conn. App. 150,155, 535 A.2d 377, (1988) cert. denied, 209 Conn. 825,552 A.2d 433 (1989). The intent to terminate Marvin Voloshin's lease is clear from the Perrottis' and WALP's efforts to put WALP in legal possession of 175 Amity Road and WALP's expense in developing it as a commercial property. At no time was the validity of the notice to quit questioned. To the contrary, Bart Voloshin admits that he "most likely would have" raised this issue at some point in the future. (Memorandum of Law in Support of Defendant's Motion for Permanent Injunction and in Opposition to Plaintiff's Motion for Permanent Injunction, p. 15.) Therefore, the notice to quit terminated Marvin Voloshin's lease.
Termination of the original lease, however, does not necessarily terminate a valid sublease.
The survival of a sublease when the original lease is terminated depends on whether the termination of the original lease was voluntary. Bargain Mart, Inc. v. Lipkis, supra, 212 Conn. 126
"Whether there has been surrender and acceptance thereof is to be determined by the intention of the parties, and thus, it is usually a question of fact for the [trier]." Id., 129, quoting 49 Am.Jur.2d Landlord and Tenant § 1095.
Generally, "[t]he right of a sublessee to possession terminates with the termination of the original lease." 49 CT Page 11027 Am.Jur.2d Landlord and Tenant, 511, cited in Village Linc v. TheChildren's Store, Superior Court, Judicial District of New Haven, Docket No. 9109-29271 (February 3, 1992, Vertefeuille, J.), aff'd,31 Conn. App. 652, 626 A.2d 813 (1993). As "a subtenant holds the premises subject to the performance of the terms and conditions impressed upon the estate by the, provisions of the original lease, his rights are generally held to be terminated when the original lessor declares a forfeiture of the original lessee's term based upon the latter's nonperformance of obligations imposed on him." (Internal quotation marks omitted.) Bargain Mart, Inc. v. Lipkis, supra, 212 Conn. 127. The sublessee's "rights are generally held to be terminated when the original lessor declares a forfeiture of the original lessee's [lease] based upon the [lessee's] nonperformance of obligations imposed on him." 49 Am.Jur.2d Landlord and Tenant, 511, cited in Village Linc v. The Children'sStore, supra, Docket No. 9109-29271.
Bart Voloshin and Woodbridge Motors, Inc. argue that Marvin Voloshin voluntarily surrendered the premises and therefore their rights under the sublease survived.
"A voluntary surrender by a principal lessee to a principal lessor, effected in a manner contrary to the provisions of termination in the lease, does not affect the rights of a tenant acquired under a sublease which the lessor had authority to make. The [voluntary] surrender will end the rights of the principal lessor in his lease; it will leave the rights of this under-tenant unimpaired." (Internal quotation marks omitted.) Bargain Mart,Inc. v. Lipkis, supra, 212 Conn. 126. A voluntary surrender of the original lease does not terminate a sublessee's rights. 49 Am.Jur.2d Landlord and Tenant, 511.
In view of the circumstances surrounding Marvin Voloshin's relinquishment of possession, the Court finds that his surrender was involuntary.
Marvin Voloshin represented to WALP that he could and would give WALP clear title to 175 Amity Road and that the sublease to Bart Voloshin was a sham. He should not be able to assert successfully that his intent was to inform WALP that the sublease to Bart Voloshin was a sham, tell WALP that his conveyance would terminate the sham sublease, and then insist that he really intended to perpetuate the results of the sham sublease.
Marvin Voloshin did not perform his obligations under his CT Page 11028 lease with the Perrottis. He was behind in the rent and faced other financial pressures (such as those stemming from his divorce). The notice to quit directed him to vacate on or before November 26, 1993, which he failed to do. Eviction procedures were instituted in the form of a summary process action. All of these events were upon him when he signed the Agreement terminating his leasehold. Under the Agreement, Marvin Voloshin was to receive $50,000 (according to WALP) or $200,000 (according to Bart Voloshin) for signing. Either sum is paltry compared to the 2.9 million at which he valued the premises during his divorce proceedings or the $800,000 value listed in the Voloshin Option Agreement. (See WALP's Post-Trial Memorandum, n. 10 and accompanying exhibits; see Bart Voloshin's Post Trial Brief, p. 3.)
Mr. Voloshin had no alternative but to surrender possession on the best terms he could extract in return for a swift disposition.
 II.
As noted above, the sublease from Marvin Voloshin to Bart Voloshin, dated May 1, 1990 was not recorded until May 4, 1994.
For Bart Voloshin to have a valid interest in 175 Amity Road, his sublease itself must be valid. For his sublease to be valid, it must have been recorded. General Statutes § 47-19. "No lease of any building, land . . . for any term exceeding one year . . . shall be effectual against any persons other than the lessor and lessee and their respective heirs, successors, administrators and executors, unless it is in writing, executed, attested, acknowledged and recorded in the same manner as a deed of land." General Statutes § 47-19.
A successor, "as applied to realty, is one who takes by will or inheritance, rather than by deed, grant, gift, purchase or contract." Drazen Properties Limited Partnership v. E. F. Mahon,Inc., 19 Conn. App. 471, 475, 562 A.2d 1142 (1989). Successors do not include successors in interest because that would "thwart the purpose of the statute." Id., 476. The reason is that "[t]he purpose of the statute is to protect creditors and bona fide purchasers from being bound by unrecorded leases of more than one year." Id. A bona fide purchaser "is a buyer who pays a full and fair price for property without notice that a third party has an interest in that property." Clean Corp. v. Foston, 33 Conn. App. 197,202, 635 A.2d 1200 (1993). Actual notice is knowing facts CT Page 11029 "sufficient to put a reasonable person on inquiry which, if prosecuted with reasonable diligence, would certainly lead to discovery of a conflicting claim." (Internal quotation marks omitted.) Id. WALP was a bona fide purchaser[.]
Though, when Marvin Voloshin actually signed the Settlement Agreement, fifty days had passed since Bart Voloshin had recorded the sublease, this does not constitute notice to WALP, thereby denying WALP bona fide purchaser status.
Bart Voloshin admits that the sublease, signed in 1990, was not recorded until 1994. When WALP began making improvements on the property years before, WALP did not know or have reason to know that Marvin Voloshin had granted a sublease — a sham one or not — on the 175 Amity Road property. WALP engaged in years of negotiations with the Perrottis and Marvin Voloshin under the assurances of Marvin Voloshin that he could and would release clear title to WALP.
Some delay in recordation maybe excused. Farmers MechanicsSavings Bank v. Garofalo, 219 Conn. 810, 816, 595 A.2d 341 (1991) (drawing a distinction between schemes of recordation involving "until" — when the recordation date begins the deed's effectiveness — and "unless" when rights can "accrue a reasonable time prior to [the deed's] actual recordation"). "[D]elays measured in months and years have been held to be unreasonable."Cottiero v. Ifkovic, 35 Conn. App. 682, 690 (1994) (stating that eight days was too long of a delay for recording a mortgage under General Statutes § 47-10, Deeds to be recorded). "[W]hat is a reasonable time [to record] is a question of fact for the trial court, and its finding is conclusive." Farmers Mechanics SavingsBank v. Garofalo, supra, 820. Bart Voloshin's delay in recording his sublease was unreasonable, particularly in view of his having asserted the existence of the sublease in 1993. Having failed to record it then, he permitted WALP to continue to incur expense and to negotiate with Marvin Voloshin.
By not recording the sublease, the sublease's validity is limited to one year. See General Statutes § 47-19 (requiring that leases in excess of a year be recorded). Without recordation, an unrecorded sublease expires after one year. Clean Corp. v. Foston, supra, 33 Conn. App. 201. Marvin and Bart Voloshin signed the sublease on May 1, 1990, but recorded it on May 4, 1994. That sublease was effective, if at all, only until May 1, 1991. When WALP was negotiating with Marvin Voloshin and when WALP began CT Page 11030 making improvements on 175 Amity Road, WALP had no idea that the sublease existed. To the contrary, the evidence shows that Bart Voloshin was not in possession and had not been on the property, which appeared abandoned.
On cross-examination of Bart Voloshin, it was developed that Woodbridge Motors, Inc., Bart's operating entity, had no phone listing in the 1992-93 nor 1993-94 white pages or yellow pages. His address with the DMV was for a post office box. DMV inspectors concluded he had vacated the premises in question and photos of the premises support this conclusion. No sign identifying this company was erected on the premises until 1994. Bart Voloshin admitted to using several other addresses: in 1992, he was employed by Volvo City; 150 Adeline Street in New Haven, where WMI were sent; and, finally a WMI address in Florida where it was licensed.
Finally, Bart Voloshin testified that he had no cars on display at 175 Amity Road, had no regular business hours, and the premises were locked when he was not there. He stated he knew his
alleged premises had been sublet to Stop Shop Stores and to political parties, but this did not interfere with his use of the rear portion of the premises.
The Court does not find Bart Voloshin robe a credible witness and concludes that neither he nor WMI were "in possession" during the period in question so as to serve notice on WALP of their claims.
 III.
Bart Voloshin also testified that he executed a sublease of his lease to WMI. He produced no original, no copy, and no recorded copy. He executed this item in December of 1991. The terms were "the same as the lease from Marvin Voloshin to Bart Voloshin."
The analysis made above with regard to the sublease from Marvin Voloshin to Bart Voloshin applies to the sublease from Bart Voloshin to WMI. Since the Court finds that Marvin Voloshin's lease was terminated, then the alleged sublease is invalid. Further, Bart Voloshin's failure to record this document at anytime renders it invalid under § 47-19. WALP had no knowledge of this sublease until trial, making WALP a bona fide purchaser. Indeed, neither Bart Voloshin nor Woodbridge Motors was in possession of 175 Amity Road. Bart Voloshin cannot escape the CT Page 11031 statutory recordation requirement, especially given his lack of evidence of the sublease's existence.
Conclusion
The Court renders a declaratory judgment that:
 a. Bart Voloshin and Woodbridge Motors, Inc. have no rights of possession under the May 1, 1990 sublease;
 b. There is no valid sublease from Bart Voloshin to Woodbridge Motors, Inc.;
 c. Woodbridge Associates Limited Partnership is entitled to possession of the premises at 175 Amity Road, New Haven.
Anthony V. DeMayo State Trial Referee