ANNE C. BEERS *v.* WESTPORT BANK AND TRUST COMPANY
(AC 17097)

Spear, Dupont and Spallone, Js.

Argued February 20—officially released October 6, 1998

672

*Charles W. Fleischmann,* for the appellant (defendant).

*Peter J. Ottomano,* for the appellee (plaintiff).

*Opinion*

SPEAR, J. The defendant appeals from the judgment of the trial court quieting title to certain real property in favor of the plaintiff. The defendant claims that the trial court improperly concluded that the defendant's prejudgment attachment was invalid because the certificate of attachment incorrectly recited that the Superior Court in the judicial district of Danbury, rather than the Superior Court in the judicial district of Fairfield at Bridgeport, had issued the prejudgment remedy. We reverse the trial court's judgment because we conclude that the prejudgment attachment was valid.[1]

The following facts are relevant to this appeal. The plaintiff conveyed a three-quarter interest in the subject property in Westport to Mark Heirtzler on June 11, 1985, and, on December 14, 1989, Heirtzler reconveyed his

---

[1] The defendant also claims that the plaintiff had no right to challenge the defendant's certificate of attachment because she received the warranty deed to the property on December 14, 1989, and failed to record it until after the certificate of attachment was filed. Moreover, the defendant claims that such a delay constituted laches. In view of our reversal of the judgment, it is not necessary for us to address these issues.

interest in the property to the plaintiff. The deed was not recorded at that time. On January 11, 1990, the defendant obtained a prejudgment remedy against Heirtzler in the judicial district of Fairfield at Bridgeport, attaching a three-quarter interest in the property. The certificate of attachment was filed on January 16, 1990, in the Westport land records. The certificate, however, as well as the sheriff's return, incorrectly stated that the prejudgment remedy was ordered by and the process was returnable to the Superior Court in the judicial district of Danbury. The plaintiff recorded her deed to the property on July 26, 1990. Heirtzler and the defendant entered into a stipulated judgment, and a judgment lien was recorded on July 12, 1991. Because the judgment lien was recorded within four months of the judgment, the lien related back to January 16, 1990, the date of the attachment. See General Statutes § 52-380a (b).

The plaintiff, after learning of the defendant's judgment lien, commenced this quiet title action, claiming that the defendant's 1990 attachment was invalid. Specifically, the plaintiff asserted that the certificate of attachment was fatally defective because it incorrectly identified the court that issued the attachment and to which process was returnable. The parties submitted their claims to an attorney trial referee. In a corrected report, the referee determined that the defect in the certificate of attachment did not render it invalid and recommended that judgment enter in favor of the defendant. The trial court rejected the report, concluding that the defect in the certificate of attachment was fatal and, therefore, there was no valid judgment lien. The trial court rendered judgment for the plaintiff, and this appeal followed.

The prejudgment remedy order issued from and the process was returnable to the judicial district of Fairfield at Bridgeport. The plaintiff claims that the error in referring to the judicial district of Danbury rendered

the certificate of attachment invalid because General Statutes § 52-285[2] must be strictly followed in order to obtain a valid attachment. The defendant asserts that the defect is inconsequential and should not invalidate the certificate of attachment.[3]

"In Connecticut, a prejudgment attachment is a provisional remedy afforded to a claimant to secure satisfaction of a judgment in the future. See *Connecticut National Bank* v. *Voog*, 233 Conn. 352, 659 A.2d 172 (1995). The right to a prejudgment attachment in Connecticut is statutory. General Statutes § 52-285; *Ambroise* v. *William Raveis Real Estate, Inc.*, 226 Conn. 757, 766, 628 A.2d 1303 (1993). The requirements for an attachment of real property include recordation of the certificate of attachment on the land records. General Statutes § 52-285. Upon recordation, a claimant obtains an inchoate lien until the time of the judgment. *State* v. *Bucchieri*, 176 Conn. 339, 348, 407 A.2d 990 (1978)." *Shawmut Bank* v. *Brooks Development Corp.*,

---

[2] General Statutes § 52-285 provides in relevant part: "Real estate shall be attached by the officer by leaving in the office of the town clerk of the town in which it is situated a certificate that he has made such attachment, which shall be endorsed by the town clerk with a note of the precise time of its reception and recorded at length in the land records of such town; and such attachment, if completed as hereinafter provided, shall be considered as made when such certificate has been so lodged. The certificate shall be signed by such officer, shall describe the land attached with reasonable certainty and shall specify the parties to the suit, *the authority issuing the writ, the court to which the process is returnable* and the amount of damages claimed; and, unless the service is so completed, such estate shall not be held against any other creditor or bona fide purchaser. . . ." (Emphasis added.)

[3] In its brief, the defendant frames this issue as challenging the trial court's rejection of the referee's finding of facts. The defendant's brief makes clear, however, that the question presented is a legal one, challenging the trial court's conclusion that the certificate of attachment was invalid. It is a well established rule in Connecticut that a trial court is not bound by the legal conclusions of a referee. *CMG Realty of Connecticut, Inc.* v. *Colonnade One Ltd. Partnership*, 36 Conn. App. 653, 664, 653 A.2d 207 (1995); see also *Seal Audio, Inc.* v. *Bozak, Inc.*, 199 Conn. 496, 510, 508 A.2d 415 (1986). The referee's conclusion that the certificate was valid, therefore, is irrelevant to our consideration of this issue.

46 Conn. App. 399, 410, 699 A.2d 283 (1997). "The statute is interpreted strictly because the right to attach property on mesne process, before the debt or claim has been established by judgment, is an extraordinary power given by statute against common right." *Anderson* v. *Briggs*, 17 Conn. Sup. 437, 439 (1952), citing *Ahern* v. *Purnell*, 62 Conn. 21, 24, 25 A. 393 (1892).

In support of its claim that the defect is inconsequential, the defendant relies on the case of *Joseph* v. *Donovan*, 114 Conn. 79, 157 A. 638 (1931). In that case, the certificate of attachment was written on a preprinted form that could be used in either the Superior Court or the Court of Common Pleas for New Haven County. Id., 83. The party drafting the certificate failed to strike out the reference to the Court of Common Pleas so that the certificate indicated that it was returnable to the "Superior Court of Common Pleas" for the county of New Haven. Id. Our Supreme Court concluded that the defect was inconsequential, and the certificate, therefore, was valid, because "[a]ny person having occasion to examine the certificate could readily have ascertained in which of the two courts the action was pending, either from the recitals of the certificate itself or by enquiry . . . ." Id.

The trial court distinguished the error here from that in *Joseph* by noting that inquiry as to the correct court was far easier in *Joseph* because the certificate indicated that the action was pending in one of only two possible New Haven County courts. Here, the trial court reasoned that "contacting the Danbury court would not have led one to the Bridgeport court," and "the success of this investigation might have required, as indicated by the referee, knowledge about the venue rules governing court filings." We disagree with the trial court's conclusion that the inquiry required here is so much more

burdensome than in *Joseph* as to make the error in the present case fatal.[4]

We first note that much has changed with respect to attachments of real estate since *Joseph* v. *Donovan,* supra, 114 Conn. 79. Most important is that a plaintiff now cannot simply attach a defendant's interest in real estate as part of commencing a lawsuit, as was true prior to 1973. A court must first find probable cause before a prejudgment remedy of attachment of real property may issue. With certain exceptions, none of which would apply here, our law requires a hearing, where a prospective defendant may challenge in an adversarial proceeding, whether there is probable cause for an attachment to issue. See General Statutes § 52-278a et seq. The attachment by mesne process against common right discussed in *Ahern* v. *Purnell,* supra, 62 Conn. 21, is a thing of the past. Although a determination of probable cause by a court is not a final decision as to liability of the property owner, it is a sufficient judicial protection to lessen the need for the kind of strict construction of the attachment statute as is advocated by the plaintiff here.

We next take notice of the fact that our court system today is centralized and under the administration of a chief court administrator. General Statutes § 51-5a. With our computerized systems,[5] it seems highly

---

[4] The trial court, in reviewing the referee's report, was not engaged in fact-finding, and its statements regarding the burden of inquiry are not findings of fact that would be subject to a clearly erroneous standard of review. We view these statements as part of the trial court's legal analysis of the reach of our Supreme Court's holding in *Joseph* v. *Donovan,* supra, 114 Conn. 79.

[5] General Statutes § 51-9 provides in relevant part: "Under the supervision and direction of the Chief Court Administrator, the executive secretary and other members of the staff of the Office of Chief Court Administrator shall . . . (17) Design, implement and maintain, as deemed feasible by the Chief Court Administrator, computerized automatic data processing systems for use in the Supreme Court, Appellate Court and Superior Court or divisions of the Superior Court . . . ."

unlikely that a person armed with the correct names and addresses of the parties as they appear in the certificate of attachment would encounter any significant difficulty in determining in which court such action was or is pending. Our Supreme Court has recognized that computerized records reflect "the revolution in data processing that is part of modern reality." *American Oil Co.* v. *Valenti,* 179 Conn. 349, 356, 426 A.2d 305 (1979).

Even without considering computerization, contacting the Danbury court and providing the names and Westport addresses of *both* parties could have been fruitful. Although the party inquiring might not have knowledge of the venue statutes, personnel in the clerk's office in the Danbury court undoubtedly would be aware, or able to ascertain easily, that when all parties reside in Westport, civil process would be returnable to either the judicial district of Stamford-Norwalk or the judicial district of Fairfield at Bridgeport.[6]

Further, the purpose of § 52-285, which is to notify third parties of the prejudgment remedy on the property,[7] is not undermined in any way by the defect in the certificate of attachment. Reciting an incorrect court location has little or no effect on a prospective purchaser or encumbrancer. The location of a pending action has little importance because the title owner is usually obligated to deliver title free of encumbrances to a purchaser and thus is responsible for removing the lien. A prospective mortgagee either already knows all

General Statutes § 51-5a (b) provides in relevant part: "The Chief Court Administrator may establish reasonable fees for conducting searches of court records. . . ."

[6] General Statutes § 51-345 (a) (3) (E) provides in relevant part: "If either the plaintiff or defendant resides in the town of . . . Westport . . . the action may be made returnable at the option of the plaintiff to either the judicial district of Stamford-Norwalk or the judicial district of Fairfield."

[7] See footnote 2.

the details of the underlying action or can readily ascertain the name of the correct court from the owner. An attaching creditor, to whom the owner might not be forthcoming, could, nevertheless, ascertain the correct court location by way of inquiry as previously discussed. In sum, all of the parties who would be put on notice by a certificate of attachment that names the wrong court could ascertain the name of the correct court, if necessary, by way of an inquiry that is not unduly burdensome.

Moreover, it is difficult to discern any prejudice to any third party because the wrong court was named in the certificate of attachment. The certificate here was sufficient to notify the plaintiff and any other third party of the overriding fact that the property was subject to a potential judgment lien that could relate back to the date that the certificate was filed. To invalidate the certificate here would be to exalt form over substance.[8]

For all of the reasons stated, we conclude that the defect is inconsequential. The inquiry necessary to determine the correct court location is not so burdensome as to preclude applying the rationale of *Joseph* v. *Donovan,* supra, 114 Conn. 79.

The judgment is reversed and the case is remanded with direction to render judgment for the defendant.

In this opinion DUPONT, J., concurred.

SPALLONE, J., dissenting. I respectfully disagree with the majority and would sustain the judgment of the trial court.

---

[8] Such an exaltation would be particularly egregious here where the parties both state in their briefs that the plaintiff is an experienced real estate agent and Heirtzler is her son-in-law. The plaintiff, in lieu of inquiring of the court, very likely could have ascertained the correct court from her son-in-law or from the defendant if she, in fact, wanted such information.

The certificate of attachment dated January 16, 1990, specified the wrong court—judicial district of Danbury instead of judicial district of Fairfield at Bridgeport—as the authority granting the order of attachment and to which the process was returnable. The certificate of attachment in this case differs from that in *Joseph* v. *Donovan*, 114 Conn. 79, 83, 157 A. 638 (1931), where the defect was apparent on the face of the certificate (returnable to the nonexistent Superior Court of Common Pleas). In this case, there is not a patent defect in the certificate mandating inquiry.

"The right to attach property on mesne process, before the debt or claim has been established by judgment, is an extraordinary power, given by statute against common right, and in order to make a valid attachment officers must strictly observe the requirements of the laws relating to such attachments." *State* v. *Hartley*, 75 Conn. 104, 107, 52 A. 615 (1902). The right to attach property is purely statutory. *Farmers & Mechanics Savings Bank* v. *Garofalo*, 219 Conn. 810, 813, 595 A.2d 341 (1991). General Statutes § 52-285 identifies the requirements for attaching real property in this state. Attachments did not exist at common law, and tying up a debtor's property prior to the litigation of a creditor's claim is a harsh remedy. *Farmers & Mechanics Savings Bank* v. *Garofalo*, supra, 814. Statutes regulating such attachment must be strictly construed. Id.

Section 52-285 mandates that to encumber the property effectively, a certificate of attachment "if completed as hereinafter provided . . . *shall* be signed by such officer, *shall* describe the land attached with reasonable certainty and *shall* specify the parties to the suit, *the authority issuing the writ, the court to which the process is returnable* and the amount of damages claimed; and, *unless the service is so completed, such estate shall not be held against any other creditor or bona fide purchaser. . . .*" (Emphasis added.)

Here, the certificate of attachment was facially correct. It did not, within its four corners, invite further inquiry. The inquiry anticipated in *Joseph* is immediately obvious and easily resolved. The trial court properly concluded, as a matter of law, that the defects in the certificate in this case rendered the certificate invalid.

The quoted portion of § 52-285 uses the mandatory "shall" four times and concludes that "unless the service is so completed, such estate shall not be held against any other creditor or bona fide purchaser." The majority opinion does not strictly construe § 52-285.

The language of § 52-285 is plain and unambiguous. Where the wording is plain, as here, statutes should be interpreted to give efficacy to the policy that the legislation seeks to serve. *Chrysler Corp.* v. *Maiocco*, 209 Conn. 579, 591–92, 552 A.2d 1207 (1989); *Aaron* v. *Conservation Commission*, 183 Conn. 532, 538, 441 A.2d 30 (1981). The obvious legislative intent expressed in § 52-285 is that creditors or bona fide purchasers are not bound by attachments that are not filed in accordance with the mandates of § 52-285. The opinion of the majority defeats the legislative intent.

The other claims of error alleged by the plaintiff are without merit.

I would sustain the judgment of the trial court.