# EDWARD TANG *v.* MALEK BOU-FAKHREDDINE
## (AC 21539)

Flynn, West and Hennessy, Js.

Argued October 18, 2002—officially released March 4, 2003

*Edward Tang,* pro se, the appellant (plaintiff).

*Opinion*

WEST, J. The pro se plaintiff, Edward Tang, appeals from the judgment of the trial court, rendered following a hearing in damages, after the defendant, Malek Bou-Fakhreddine, was defaulted for failing to attend a pre-trial conference. On appeal, the plaintiff claims that the court improperly (1) concluded that he failed to meet his burden of proof on those counts of his amended complaint alleging violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., reckless indifference and unintentional infliction of emotional distress, (2) failed to award $5855 in damages on the basis of a finding that he had testified that part of that sum was duplicative of other damages awarded, (3) failed to award prejudgment interest, (4) failed to award damages for negligence, (5) precluded him from submitting affidavits as evidence of damages for inconvenience, mental duress, suffering and anguish, and (6) failed to award $286.85 and $512 for storm windows and electrical work, respectively. We reverse in part the judgment of the trial court.

The following facts are relevant to our disposition of the plaintiff's appeal. In 1994, the plaintiff entered into a written contract with the defendant for certain renovations to the plaintiff's residence. Under that contract, the defendant, a registered home improvement contractor, was to add a full dormer to the rear of the plaintiff's residence. To ensure that the plans and specifications for that work complied with the local building codes, the parties attended a number of meetings with the Fairfield building department. Those meetings eventually culminated in the issuance of a building permit following the submission and approval of plans and specifications dated September 4, 1994.

The approved building plans specified, inter alia, that the dormer structure was to be supported by cantilevered beams eight feet in length, with a two foot overhang beyond the existing footprint of the residence. In contravention of those specifications, and without notice either to the plaintiff or to the building department, the defendant installed cantilevered beams six feet in length. In the course of installing those beams, the defendant caused significant damage to the building's first floor ceiling.

The plaintiff first filed a complaint in this action on May 20, 1996. The plaintiff's fifth, and final, amended complaint was filed on April 22, 1999. In that complaint, the plaintiff alleged breach of contract, violation of CUTPA, reckless indifference, unintentional infliction of emotional distress and negligence.

On April 23, 1999, the court rendered a judgment of default against the defendant for his failure to attend a pretrial conference. On October 27, 2000, following a hearing in damages, the court issued its memorandum of decision, awarding the plaintiff $21,291.35 on the basis of the negligence and breach of contract claims. The court found, however, that the plaintiff had not

satisfied his burden of proof with respect to his claims of fraudulent concealment, recklessness, unintentional infliction of emotional distress and CUTPA. The plaintiff sought an articulation of the court's memorandum of decision. This court ordered the trial court to articulate why it had not awarded the plaintiff damages for certain items and services, and why it had not awarded prejudgment interest. The court articulated its decision by way of an amended memorandum of decision in which it awarded an additional $1780 to the plaintiff for some of the remaining items. The court, however, affirmed its previous denial of prejudgment interest. This appeal followed.

I

We first address the plaintiff's claim that the court improperly concluded that he had failed to meet his burden of proof with respect to those counts of his amended complaint alleging a violation of CUTPA, reckless indifference and unintentional infliction of emotional distress.[1] Our review of the legal sufficiency of pleadings is plenary. *Saunders* v. *Stigers*, 62 Conn. App. 138, 142, 773 A.2d 971 (2001).

"A default admits the material facts that constitute a cause of action . . . and entry of default, when appropriately made, conclusively determines the liability of a defendant." (Citation omitted; internal quotation marks omitted.) *Skyler Ltd. Partnership* v. *S.P. Douthett & Co.*, 18 Conn. App. 245, 253, 557 A.2d 927, cert. denied, 212 Conn. 802, 560 A.2d 984 (1989). If the allegations of the plaintiff's complaint are sufficient on their face to make out a valid claim for the relief requested, the

[1] Although the plaintiff sets forth his CUTPA and "reckless indifference" claims as separate counts, they are, in essence, the same claim. The second count of the amended complaint, which alleged a violation of CUTPA, relates to liability, while the third count, which alleged reckless indifference, relates to the applicability of awarding punitive damages for the CUTPA violation.

plaintiff, on the entry of a default against the defendant, need not offer evidence to support those allegations. *Carothers* v. *Butkin Precision Mfg. Co.*, 37 Conn. App. 208, 209, 655 A.2d 799 (1995). Therefore, the only issue before the court following a default is the determination of damages. Id. A plaintiff ordinarily is entitled to at least nominal damages following an entry of default against a defendant in a legal action. *Melfi* v. *Danbury*, 70 Conn. App. 679, 691, 800 A.2d 582, cert. denied, 261 Conn. 922, 806 A.2d 1061 (2002).

We turn now to an examination of each count to determine whether the allegations of the plaintiff's complaint are sufficient on their face to make out a valid claim for the relief requested.

A

The CUTPA Claim

In the present case, the plaintiff's complaint alleges CUTPA violations based on the defendant's installation of insufficiently long cantilever beams in violation of the approved design specifications, concealment of the defective installation of those beams and failure to supervise properly and to pay his subcontractors, resulting in incomplete and unfinished work. The complaint also alleges that the contract provided by the defendant violates public policy in that it fails to meet the requirements of the Home Improvement Act, General Statutes § 20-418 et seq. The complaint alleges that the contract did not contain the starting and completion dates, notice of the homeowner's cancellation rights or the defendant contractor's address.

General Statutes § 20-429 (a) provides in relevant part: "No home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the

contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor. . . ." Pursuant to General Statutes § 20-427 (c), any violation of the Home Improvement Act is deemed to be an unfair or deceptive trade practice and constitutes a per se violation of CUTPA. *Meadows* v. *Higgins*, 49 Conn. App. 286, 296, 714 A.2d 51 (1998), rev'd on other grounds, 249 Conn. 155, 733 A.2d 172 (1999).

The material facts regarding the deficiencies of the construction contract as set forth in the plaintiff's fifth amended complaint are sufficient to establish a violation of the Home Improvement Act and, consequently, are also sufficient to justify an award of damages pursuant to CUTPA. See *Kronberg Bros., Inc.* v. *Steele*, 72 Conn. App. 53, 59–60, 804 A.2d 239 (defective notice of cancellation rights in contract sufficient for award under CUTPA), cert. denied, 262 Conn. 912, 810 A.2d 277 (2002).

Once a violation of CUTPA has been established, evidence that the defendant has acted with reckless indifference to the rights of the plaintiff or has committed an intentional and wanton violation of those rights is a necessary prerequisite to the award of punitive damages. *Gargano* v. *Heyman*, 203 Conn. 616, 622, 525 A.2d 1343 (1987); *Tanpiengco* v. *Tasto*, 72 Conn. App. 817, 821, 806 A.2d 1080 (2002). Such an award, however, is discretionary, and "the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done." *Gargano* v. *Heyman*, supra, 622.

The plaintiff's allegations in support of his CUTPA count consist of little more than a recitation of the facts

establishing the CUTPA violation, as set forth in the previous count of the complaint, with the necessary boilerplate characterization of the defendant's actions as "outrageous," "intentional" or "wilful" appended to each paragraph of the count. Nevertheless, in light of the defendant's default, they are sufficient to establish liability for the purpose of awarding punitive damages. Accordingly, we conclude that the court abused its discretion in failing to award at least nominal damages under CUTPA for the defendant's violations of the Home Improvement Act, and his wilful and wanton violation of the plaintiff's contractual rights.

## B

### Unintentional Infliction of Emotional Distress

To prevail on a claim of negligent infliction of emotional distress, the plaintiff must demonstrate that the defendant should have realized that his conduct involved an unreasonable risk of causing emotional distress and that such distress, if it were caused, might result in bodily harm or illness. *Shaw* v. *Shell Oil Products Co.*, 119 F. Sup. 2d 62, 70 (D. Conn. 2000); *Montinieri* v. *Southern New England Telephone Co.*, 175 Conn. 337, 341, 398 A.2d 1180 (1978). We conclude that the allegations of the plaintiff's complaint are sufficient on their face to make out a valid claim of negligent infliction of emotional distress.

Count four of the plaintiff's operative complaint sets forth his claim of unintentional infliction of emotional distress and contains the following recitation:

"33. The conduct of the Defendant has caused the Plaintiff and his family distress of mind, mental suffering and or mental anguish in one or more of the following ways:

"A. As a direct result of the contract not containing a completion date, the Plaintiff was mentally oppressed

with thoughts of being at the mercy of the Defendant, especially since he was paid ahead of schedule. The Plaintiff made the last payment on or about December 20, 1994 after the Defendant cited the need for Christmas money and requested it as a favor.[2]

"B. As a direct result of the Defendant's defective cantilever installation and concealment thereof, the Plaintiff was left in mental shock and in a despairing mental state of betrayal of trust and disbelief of [the defendant's] conduct in installing the defective cantilevers, concealment and refusal [to] correct the defective installation.

"C. As a direct consequence of the Defendant's breaches in contract, promises and refusal to correct his misdoings, the Plaintiff was mentally angered, and bore mental disillusioning and hopeless thoughts of ever completing the addition.

"D. As a further consequence of the Defendant's conduct, the Plaintiff was mentally stressed with burdensome thoughts of obtaining finances to correct and complete [and] finish the addition he had contracted and paid the Defendant to perform.

"E. The Plaintiff has suffered utter mental frustration in his attempts to hire contractors, most of whom declined to give quotes and the work to avoid "cleaning up another contractor's dirty work" and perceived involvement in legal actions.

"F. The Plaintiff has been mentally burdened with daily thoughts of having to work far beyond what he expected to obtain help to correct [and] to complete the addition. This had and has caused the Plaintiff to worry daily about how he was to finance completing the addition.

---

[2] With respect to that allegation, we note only that a party may not recover damages for mental distress resulting from *his own* negligence.

"G. The Defendant's conduct has caused much mental upheaval, disagreements and discord between the Plaintiff and his family.

"H. As a direct result of the Defendant's conduct, the Plaintiff has been embarrassed before his neighbors, friends and acquaintances with the result that he and his family have been isolated socially in not being able to invite people over to the Plaintiff's house.

"I. As a direct result of the Defendant's conduct, the Plaintiff has been left in an oppressed state of mind between suffering utter mental frustration with contractors who declined the work to complete the addition and distrusting any contractor at all.

"34. The Defendant knew or should have reasonably foreseen from the facts and experiences known to him that his conduct could cause and or create an unreasonable risk of distress of mind, mental suffering and mental anguish that could cause physical harm or illness.

"35. The conduct of the Defendant has caused, is causing and will in the future cause the Plaintiff distress of mind, mental suffering and mental anguish.

"36. As a further result of the Defendant's conduct, the Plaintiff (and his family) have been, is and will in the future be grossly inconvenienced."

Those allegations exhaustively set forth the basis for the plaintiff's claim of emotional distress and allege that the defendant should have realized that his conduct involved an unreasonable risk of causing emotional distress and that such distress, if it were caused, might result in bodily harm or illness. Because the allegations of the plaintiff's complaint are sufficient on their face to make out a valid claim for the unintentional infliction of emotional distress, the plaintiff was entitled to at least nominal damages on that claim in light of the defendant's default. See *Melfi* v. *Danbury*, supra, 70

Conn. App. 691. Accordingly, we reverse the court's determination that the plaintiff failed to sustain his burden of proof on the unintentional infliction of emotional distress claim.

## II

We next address the plaintiff's claim that the court improperly failed to award $5855 in damages on the ground that he had testified that part of that sum was duplicative of other damages that were awarded, and because he had not provided any evidence allowing the court to assess accurately what portion of the total was duplicative and what portion was not duplicative. We agree with the plaintiff.

This court will not disturb the trial court's factual findings unless they are clearly erroneous. See *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Premier Capital, Inc.* v. *Grossman*, 68 Conn. App. 51, 59, 789 A.2d 565, cert. denied, 260 Conn. 917, 797 A.2d 514 (2002).

The court claimed to have based its determination that the sum was duplicative on the testimony of the plaintiff himself.[3] After reviewing the record and the transcript of the hearing in damages, we find no evi-

---

[3] The court stated in its amended memorandum of decision: "The court has considered whether to include as recoverable damages $5855 paid by the plaintiff to Gregory D. Jones pursuant to Mr. Jones' affidavit. The plaintiff's testimony was that some of the account was for damage included in Mr. Moffitt's estimate; however, there is no evidence before the court as to what portion of this amount was duplicative and what portion was not. Therefore, the court declines to include the amount paid to Mr. Jones as damages in this case."

dence to support the court's conclusion that any portion of the work for which the plaintiff paid $5855 to Gregory D. Jones, a carpenter, was duplicative of work contained in the estimate provided by Robert F. Moffitt, a residential contractor. The testimonial evidence, as well as the documentary evidence, supports the conclusion that the work performed by Jones supplemented rather than duplicated the work estimated by Moffitt. We conclude, therefore, that the court's determination was clearly erroneous.

The record shows that the plaintiff entered into evidence a written estimate prepared by Moffitt, detailing the work required to correct the defective installation of the cantilevered beams. The majority of the work covered by Moffitt's estimate was directly related to the installation of the cantilever beams themselves. The only work included in Moffitt's estimate that did not directly involve the cantilever beams was the removal and replacement of the ceiling insulation and Sheetrock in three affected rooms that were damaged as a result of the defendant's actions, and the painting of the ceilings in those rooms.

The plaintiff also entered into evidence copies of the checks used to pay Jones for the work that he performed at the plaintiff's residence. There was no evidence that any of the work performed by Jones involved either the cantilever beams or work on the ceilings of the three rooms detailed in Moffitt's estimate. Each of the checks written to Jones bears a handwritten notation describing the general nature of the work performed. Six of those checks, totaling $3240, were, apparently, payment for various finish work performed by Jones, including work on the trim and doors, and on an upstairs closet. One check, for $125, indicates that it was payment for the installation of the gutter. The three remaining checks, totaling $2490, indicate that they were in payment for work involving wallboard

and drywall. Thus, those checks provide no evidence that the work performed by Jones duplicated the work detailed in the Moffitt estimate.

In addition to the documentary evidence, the plaintiff testified that he incurred damages beyond those covered by Moffitt's estimate. At the hearing in damages, the following colloquy occurred:

"The Court: Well, I'm a little bit confused, Mr. Tang, because we have an estimate here by [Moffitt,] who just testified, who talks about the removing and disposing of ceiling insulation and Sheetrock in [the plaintiff's son's] room . . . white paint.

"[Plaintiff]: Okay.

"The Court: Now, does that cover everything that had to be done or doesn't it? Now, what—what you're telling me now, is that in addition to this work?

"[Plaintiff]: There's more work on top of that, yes.

"The Court: All right.

"[Plaintiff]: And it is outlined in the summary of damages, which is in there, too."

The sole testimony regarding the payments to Greg Jones consisted of a short colloquy:

"The Court: All right. And who is Greg Jones?

"[Plaintiff]: Greg Jones was another carpenter who did much of the work in terms of Sheetrocking, the trim on the windows, things like that that were left undone.

"The Court: And that was not included in the bid—in the estimate that—

"[Plaintiff]: It comes after that. It come after the summary."

The clear import of that exchange is that the work performed by Jones was not included in the estimate provided by Moffitt. Thus, we can find no basis in the record for the court's conclusion that the plaintiff testified that the work at issue was duplicative. We conclude, therefore, that it was clearly erroneous for the court to have made the factual finding that part of the $5855 paid to Jones was duplicative of work covered by Moffitt's estimate, based as that finding was on the court's perception of the substance of the plaintiff's testimony.

### III

We next address the claim that the court improperly denied the plaintiff prejudgment interest pursuant to General Statutes § 37-3a. The court concluded that prejudgment interest pursuant to § 37-3a was not warranted because the claimed damages, although arising from a breach of contract, "are similar to damages in a personal injury claim in negligence where a party is seeking to be made whole for the loss caused by another." We agree with the court.

"The allowance of prejudgment interest as an element of damages is an equitable determination and a matter lying within the discretion of the trial court." (Internal quotation marks omitted.) *Killion* v. *Davis*, 69 Conn. App. 366, 375, 793 A.2d 1237, cert. denied, 260 Conn. 931, 799 A.2d 295 (2002). Therefore, we generally review the court's denial of prejudgment interest for an abuse of discretion. See id. In concluding that prejudgment interest was not warranted, however, the court relied on its interpretation of *Foley* v. *Huntington Co.*, 42 Conn. App. 712, 742, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996). Because the court relied on a legal conclusion in determining that the prejudgment interest statute did not apply to the present facts,

our review of the court's conclusion as to the applicability of the statute to the facts is plenary.

General Statutes § 37-3a provides in relevant part that "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. . . ." "[P]rejudgment interest is awarded in the discretion of the trial court to compensate the prevailing party for a delay in obtaining money that rightfully belongs to him. . . . The detention of the money must be determined to have been wrongful. . . . Its detention can only be wrongful, however, from and after the date on which the court, in its discretion, determines that the money was due and payable." (Citations omitted; internal quotation marks omitted.) *Northrop* v. *Allstate Ins. Co.*, 247 Conn. 242, 254–55, 720 A.2d 879 (1998).

The court cited *Foley* for the proposition that prejudgment interest pursuant to § 37-3a is not warranted in cases for breach of contract in which the damages "are similar to damages in a personal injury claim in negligence where a party is seeking to be made whole for the loss caused by another." *Foley* v. *Huntington Co.*, 42 Conn. App. 742. The court also found support for its denial of prejudgment interest in *Paulus* v. *LaSala*, 56 Conn. App. 139, 147, 742 A.2d 379 (1999), cert. denied, 252 Conn. 928, 746 A.2d 789 (2000), in which the court reiterated that "[i]t has long been recognized that there is no right to interest on a disputed demand unless a contact or a statute so provides." Id.

*Foley* involved a breach of contract for the conveyance of a nursing home facility and the 3.74 acres of the tract on which it was located. Although the plaintiff had tendered $155,000 to the defendant as a deposit for the property, the court found, on the basis of testimony presented at trial, that the defendant had offered to

return the deposit and that the plaintiff had refused to accept the deposit. See *Foley* v. *Huntington Co.*, supra, 42 Conn. App. 737. On that basis, the court concluded that the $155,000 deposit could not be the subject of prejudgment interest for a " 'detention of money after it becomes payable' " pursuant to § 37-3a. Id. The court then considered whether § 37-3a was applicable to the remaining damages claimed by the plaintiff. The court concluded that "[t]he damages for the breach of contract in this case are similar to damages in a personal injury claim in negligence where a party is seeking to be made whole for the loss caused by another. The damages claimed and awarded to the plaintiff were for the loss of the benefit of his bargain. In this case, neither party claimed to have performed fully or substantially under the contract so as to invoke the other's obligation to pay a liquidated sum or to provide services under the contract." Id., 742.

The plaintiff argues that the present case is distinguishable from *Foley* because he does not seek damages for the "loss of the benefit of his bargain," but rather pursues such damages as will "place him in the same position that he would have been in had the contract been performed." We find that to be a difference without a distinction.[4] Indeed, those phrases are merely alternative formulations of the same substantive standard. See, e.g., *Keefe* v. *Norwalk Cove Marina, Inc.*, 57 Conn. App. 601, 610, 749 A.2d 1219 (" '[c]ontract damages are ordinarily based on the injured party's expectation interest and are intended to give him the

[4] The plaintiff cites *L.F. Pace & Sons, Inc.* v. *Travelers Indemnity Co.*, 9 Conn. App. 30, 41, 514 A.2d 766, cert. denied, 201 Conn. 811, 516 A.2d 886 (1986), for the relevance of the distinction he seeks to make. That case, however, did not involve an award of interest pursuant to General Statutes § 37-3a. Rather, the portion of the case cited by the plaintiff involves the court's discussion of the general rule regarding the proper measure of damages in contract cases in the context of a defendant's claim that the trial court improperly had awarded lost profits because they were too speculative.

benefit of the bargain by awarding a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed' "), cert. denied, 254 Conn. 903, 755 A.2d 881 (2000).

Prejudgment interest pursuant to § 37-3a is appropriate only where the essence of the action itself involves the wrongful withholding of money due and payable to the plaintiff. The prejudgment interest statute does not apply when the essence of the action is the recovery of damages to compensate a plaintiff for injury, damage or costs incurred as a result of a defendant's negligence. It ordinarily does not apply to contract actions in which the plaintiff is not seeking the recovery of liquidated damages or the recovery of money advanced under a contract and wrongfully withheld after a breach of that contract. The prejudgment interest statute does not apply to such actions because they do not advance claims based on the wrongful withholding of money, but rather seek damages to compensate for losses incurred as a result of a defendant's negligence. Moreover, such damages are not considered due and payable until after a judgment in favor of the plaintiff has been rendered.

It is true that in contrast to *Foley*, the plaintiff in the present case substantially performed his contractual obligations by paying a significant portion of the contract price. The plaintiff paid the defendant $23,299 of a total contract price of $25,150. In his complaint, however, the plaintiff did not claim that the defendant was wrongfully withholding that $23,299. The plaintiff did not seek the return of the sum paid to the defendant pursuant to the contract. Rather, his complaint sought damages for the costs necessary to correct the damage proximately caused by the defendant's negligence. Accordingly, the court correctly applied the logic and reasoning of *Foley* to the facts of the present case. We

conclude, therefore, that the court did not abuse its discretion in denying the plaintiff prejudgment interest pursuant to § 37-3a.

## IV

The plaintiff also claims that the court improperly failed to award damages for negligence. The plaintiff specifically objects to the court's failure to award any noneconomic or general damages for "gross inconvenience," "distress of mind, mental suffering and or mental anger."

Although not pleaded specifically as a claim alleging emotional distress, the language of the plaintiff's claim suggests that it is derived from his claim alleging the unintentional infliction of emotional distress. We determined in part I B that the plaintiff had set forth sufficient allegations to establish the defendant's liability for unintentional infliction of emotional distress and that as a consequence, the plaintiff was entitled to at least nominal damages on that claim. In light of that conclusion, an additional award of noneconomic damages to the plaintiff for the defendant's negligence would be improper because it would result in a double award for the same alleged injury. See *Bonan* v. *Goldring Home Inspections, Inc.*, 68 Conn. App. 862, 869–70, 794 A.2d 997 (2002); *Jonap* v. *Silver*, 1 Conn. App. 550, 561, 474 A.2d 800 (1984) (despite invoking separate theories of liability, plaintiff "not entitled to recover twice for the same elements of damage such as mental distress . . . growing out of the same transaction, occurrence or event"). Accordingly, we conclude that the court properly declined to award noneconomic damages to the plaintiff under the generalized negligence count.

## V

The plaintiff also claims that the court improperly precluded him from submitting affidavits as evidence

of damages for inconvenience and mental duress, suffering and anguish. We disagree.

"It is well settled that [t]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . [Its] ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make *every reasonable presumption* in favor of upholding the trial court's ruling, and only upset it for a *manifest abuse of discretion.*" (Emphasis in original; internal quotation marks omitted.) *White* v. *Westport,* 72 Conn. App. 169, 172, 804 A.2d 1011 (2002). Moreover, "[i]t is a fundamental rule of appellate procedure in the review of evidential rulings, whether resulting in the admission or exclusion of evidence, that an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him." (Internal quotation marks omitted.) *Cadle Co.* v. *Errato,* 71 Conn. App. 447, 466, 802 A.2d 887, cert. denied, 262 Conn. 918, 812 A.2d 861 (2002).

In the present case, the plaintiff sought to introduce the affidavits of three of his neighbors to support his claims regarding the change in his behavior as a result of the defendant's negligence. The court prohibited the plaintiff from submitting the affidavits, declaring that their admission would be unfair to the defendant because he would be unable to cross-examine the affiants. The court also stated that the admission of the affidavits would be merely cumulative.

The plaintiff's argument elides the reasoning of the court in excluding the affidavits. A party to a civil action has the right to cross-examine witnesses on the amount of damages. See *Urich* v. *Fish,* 261 Conn. 575, 585, 804 A.2d 795 (2002) (admission of hearsay estimates deprived plaintiff opportunity to cross-examine on issue

of damages); *Ann Howard's Apricots Restaurant, Inc.* v. *Commission on Human Rights & Opportunities,* 237 Conn. 209, 224, 230, 676 A.2d 844 (1996). The court was concerned primarily that the nature of the evidence was such that the defendant would be unable to cross-examine the witnesses in light of the nondisclosure of that evidence. As the court itself made clear, prior disclosure would not have been necessary had the plaintiff called the affiants to testify in person.[5]

We also agree with the court's conclusion that the affidavits were merely cumulative of the plaintiff's testimony. "It is within the court's discretion to exclude cumulative evidence." *State* v. *Rodriguez,* 60 Conn. App. 398, 405, 759 A.2d 123 (2000), cert. denied, 255 Conn. 928, 767 A.2d 103 (2001). The plaintiff testified regarding the mental distress that he suffered as a result of the defendant's negligence. We are not persuaded that the admission of affidavits containing third party observations of the plaintiff's alleged mental distress would have aided the court in determining the appropriate amount of damages to be awarded. Just as the defendant would have been unable to cross-examine those witnesses, so the court, as the finder of fact, would have been unable to judge the credibility and demeanor of those witnesses from the written affidavits. "Credibility must be assessed . . . by observing firsthand the witness' conduct, demeanor and attitude. . . . As a practical matter, it is inappropriate to assess credibility without having watched a witness testify, because demeanor, conduct and other factors are not fully reflected in the cold, printed record." (Internal quotation marks omitted.) *State* v. *Hunt,* 72 Conn. App.

---

[5] The court stated: "Well, you see, here, we're getting into an issue where counsel—if you wanted these neighbors to come in and testify for you—not every witness can testify by affidavit, and it isn't fair to just submit affidavits without telling counsel ahead of time that you're going to do that because counsel has a right to cross-examine these witnesses, and he can't cross-examine a piece of paper."

875, 884, 806 A.2d 1084, cert. denied, 262 Conn. 920, 812 A.2d 863 (2002). We conclude, therefore, that the court did not abuse its discretion in excluding the plaintiff's affidavits from evidence.

## VI

Finally, the plaintiff claims that the court improperly failed to award him $286.85 and $512 for storm windows and electrical work, respectively. We agree in part.

"In an action at law, the rule is that the entry of a default operates as a confession by the defaulted defendant of the truth of the material facts alleged in the complaint which are essential to entitle the plaintiff to some of the relief prayed. It is not the equivalent of an admission of all of the facts pleaded. The limit of its effect is to preclude the defaulted defendant from making any further defense and to permit the entry of a judgment against him on the theory that he has admitted such of the facts alleged in the complaint as are essential to such a judgment. It does not follow that the plaintiff is entitled to a judgment for the full amount of the relief claimed. The plaintiff must still prove how much of the judgment prayed for in the complaint he is entitled to receive." *Murray* v. *Taylor*, 65 Conn. App. 300, 334–35, 782 A.2d 702, cert. denied, 258 Conn. 928, 783 A.2d 1029 (2001).

"The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Franc* v. *Bethel Holding Co.*, 73 Conn. App. 114, 140, 807 A.2d 519, cert. granted on other grounds, 262 Conn. 923, 812 A.2d 864 (2002).

The complaint asserted that the parties had entered into a supplementary oral contract pursuant to which the defendant was to provide the plaintiff with two Andersen combination storm windows and was to install them. The plaintiff submitted a "summary of damages" to the court. That summary listed, inter alia, $286 for the purchase and installation of two storm windows. The defendant, as a result of the default, is presumed to have admitted liability on all material facts contained in the complaint. Accordingly, we conclude that the court's finding that the parties had not contracted for the delivery and installation of those two storm windows was clearly erroneous.

The court also denied the plaintiff's request for damages for the electrical rewiring of three first floor rooms. The court found that the contract between the parties specifically provided that "customer [provide] electrical, plumbing and heating, painting." Nevertheless, the plaintiff's "summary of damages" listed $512 in estimated costs for the electrical rewiring of the "three rooms affected."

With respect to the claimed damages, the plaintiff argues that the electrical work listed in his "summary of damages" was not the work contemplated under the written contract, but rather, additional and unanticipated electrical work necessitated solely by the defendant's defective installation of the cantilever beams. Notwithstanding the plaintiff's argument, our review of the record does not reveal any evidence tending to establish that the electrical work for which the plaintiff seeks damages would not have been necessary in any event. The only definitive fact relating to electrical work is that some such work was contemplated as a necessary consequence of constructing the dormer and installing the cantilevered beams. Whether replacing the defective cantilevered beams necessitated more electrical work than the initial installation of those

beams is addressed only by inference from the plaintiff's claim of additional damages. Accordingly, we conclude that the court's finding that the claimed electrical work was identical to the electrical work originally contemplated under the contract was not clearly erroneous.

The judgment is reversed in part and the case is remanded for further proceedings to recalculate the award of damages consistent with this opinion.

In this opinion the other judges concurred.