MICHEL MORAN *v.* RICKY A. MORNEAU ET AL.
(AC 34139)

DiPentima, C. J., and Beach and Bishop, Js.

Argued September 18, 2012—officially released January 15, 2013

*John-Henry M. Steele,* for the appellant (plaintiff).

*Sean P. Clark,* for the appellee (defendant Chase Home Finance, LLC).

### Opinion

BEACH, J. The dispositive issue in this foreclosure action is whether a default judgment entered against the defendant Chase Home Finance, LLC (Chase),[1] definitively established the lien priority order alleged in

---

[1] Ricky A. Morneau and JPMorgan Chase Bank, N.A., were also named as defendants in the amended complaint. The spelling of Morneau's first name has varied from "Rickey" to "Ricky" throughout the proceedings in the underlying action but we note that Morneau's signature on certain documents in the record uses "Ricky." Neither of these defendants is a party to this appeal. Additionally, we note that the plaintiff, Michel Moran, is now known as Michel Gonzalez.

the amended complaint[2] of the plaintiff, Michel Moran. Because we hold that the factual allegations in the complaint, even if true, did not, as a matter of law, establish that the plaintiff held the first priority, Chase's default did not operate to reify the plaintiff's erroneous legal conclusions. We therefore affirm the judgment of the trial court.

The facts and procedural history relevant to the disposition of this issue were largely recounted in a prior appeal taken in this case. See *Moran* v. *Morneau*, 129 Conn. App. 349, 19 A.3d 268 (2011).[3] "Ricky A. Morneau owns the subject property commonly known as 399 Main Street in Portland. The plaintiff . . . commenced this action seeking to foreclose on a judgment lien that she holds on the property. In the operative complaint, the plaintiff alleged that on July 17, 2003, she recorded a '[n]otice [r]e: constructive [t]rust 1/2 [o]wnership' of the subject property on the Portland land records.[4] She obtained a prejudgment attachment against the property in the amount of $54,000, which she recorded on the

[2] As the amended complaint is the operative complaint for purposes of this appeal, for convenience, we refer to the amended complaint as the complaint throughout this opinion.

[3] Although the prior appeal sought to resolve the priority order between these parties with respect to the subject property, we did not reach the merits of this issue because of the lack of a final judgment. See *Moran* v. *Morneau*, supra, 129 Conn. App. 357–59.

[4] The notice of constructive trust states in relevant part: "[The plaintiff], of Middletown, Connecticut, claims a 1/2 (one-half) ownership interest in [399 Main Street, Portland, CT]. . . . [The plaintiff] was domiciled at said [p]roperty from the date of purchase . . . to June 19, 2003. . . . [The plaintiff] has contributed at least fifty percent of all costs and expenses related to the purchase, mortgage, repair costs, and daily maintenance expenses of the property. . . . Ricky A. Morneau holds this property in [c]onstructive [t]rust for [the plaintiff]." This notice was not signed by Morneau, but attached was a letter signed by him, identified as Schedule B, that stated in full: "[The plaintiff] has since [November 15, 2000] paid 1/2 of all expenses and mortgage payments. That she has a vested interest and is an equal owner of 399 Main [Street], Portland, CT. This statement shall be formalized thru further written agreement by [June 3, 2003] to ensure [the plaintiff's] rights and interests."

land records on May 28, 2004. The plaintiff prosecuted a successful breach of contract action against Morneau and was awarded a monetary judgment in the principal amount of $63,061, plus interest.[5] She recorded the judgment lien on the land records on February 15, 2006.

"[Chase] is the assignee of and successor in interest to a promissory note and mortgage deed in the original principal amount of $185,000, which was recorded on the Portland land records on August 22, 2003. . . . The plaintiff's position is that both the attachment and the judgment lien relate back to the July, 2003 '[n]otice [r]e: constructive [t]rust 1/2 [o]wnership,' which would give her claim priority over that of . . . Chase . . . ." Id., 350–51.

Chase was defaulted for its failure to appear in the lien foreclosure action, and on April 30, 2009, the court rendered a judgment of strict foreclosure in favor of the plaintiff. Chase timely moved to open the default judgment and to convert it to a judgment of foreclosure by sale. See Practice Book § 17-43. The court, *Holzberg, J.*, heard arguments on the motion on September 14, 2009. Chase argued that the default should be set aside because it had been improperly served and that, contrary to the allegations in the complaint, its lien held first priority over the subject property because the filing of the notice of constructive trust had no enforceable effect on the priority of the plaintiff's judgment lien. The plaintiff contended that service had been properly made on Chase,[6] and, moreover, that Chase's default

---

[5] See *Moran* v. *Morneau*, Superior Court, judicial district of Middlesex, Docket No. CV-04-0104115-S (February 6, 2006). In the plaintiff's breach of contract action, the court found that there was a breached agreement between the plaintiff and Morneau to share in the equity of the house, for which she was awarded $38,200 in damages, and that Morneau additionally owed the plaintiff $10,000 for a loan she had made to him, which he had failed to repay.

[6] On appeal, the plaintiff continues to argue that service of process was properly made on Chase, and, therefore, the court had no discretion to set aside the default judgment under Practice Book § 17-43 (a). The service of

effectively admitted the priority order alleged in her complaint. Following arguments, the court converted the judgment to a foreclosure by sale, and set a sale date of November 21, 2009. The court did not open the default.

Chase then filed a motion to determine the priorities of the liens, which was argued on October 29, 2009. The parties again disputed the effect of Chase's default. The plaintiff reasserted her position that the default conclusively established the allegations in the complaint, i.e., that she held the first priority possession. Chase argued that the default had no effect on the determination of priorities, which determination generally occurs during a supplemental judgment proceeding, and that its interest in the subject property was superior to the plaintiff's because there was no legal basis for her judgment lien to relate back to the notice of constructive trust filed on July 17, 2003. On November 16, 2009, the court issued an order that Chase's position was first in priority. The court held that the plaintiff's notice of constructive trust was not a valid lien or encumbrance on the subject property and that the plaintiff's subsequent attachment and judgment lien did not relate back to it.[7]

process issue is inapposite; as we explain subsequently in this opinion, even assuming the default judgment remained in force, it did not have the effect of rendering the lien priority order alleged in the plaintiff's complaint unreviewable by the trial court.

[7] Generally, in a foreclosure by sale, issues regarding priorities are litigated after the sale has occurred. See 1 D. Caron & G. Milne, Connecticut Foreclosures: An Attorney's Manual of Practice and Procedure (5th Ed. 2011) § 9-2:2, pp. 437–38, 440. In this case, however, Chase moved the court to determine the priorities before the sale for two reasons. First, there was likely not enough equity in the property to satisfy all of the interests sought to be foreclosed, and second, there were two parallel (and unconsolidated) cases regarding the foreclosure of the subject property. Chase had initiated its own foreclosure proceeding against Morneau; see *Chase Home Finance, LLC* v. *Morneau*, Superior Court, judicial district of Middlesex, Docket No. CV-07-5002946-S; and Morneau had been defaulted. Chase argued, therefore, that a determination of priorities was necessary in advance of a foreclosure

Prior to the date set for the foreclosure sale, the plaintiff appealed the determination of priorities to this court. See *Moran* v. *Morneau,* supra, 129 Conn. App. 350. The appeal was dismissed for lack of a final judgment. Id., 359. The plaintiff then moved in the trial court for a judgment of strict foreclosure to facilitate appellate review of the determination of priorities, which motion was granted on December 12, 2011. This appeal followed.

This case reduces to a disagreement over the effect of Chase's default on the determination of priorities. The plaintiff's sole claim on appeal is that Chase's default established the priority order alleged in the complaint and that the court had no discretion, after the default, to review the plaintiff's legal conclusions regarding the effect of the filing of the notice of constructive trust. We disagree. A default may settle many issues, but it does not operate to insulate a mistaken legal proposition from judicial review.

"A default admits the material facts that constitute a cause of action . . . and entry of default, when appropriately made, conclusively determines the liability of a defendant. . . . If the allegations of the plaintiff's complaint are sufficient on their face to make out a valid claim for the relief requested, the plaintiff, on the entry of a default against the defendant, need not offer evidence to support those allegations." *Whitaker* v. *Taylor,* 99 Conn. App. 719, 725–26, 916 A.2d 834 (2007).

"Although the failure of a party to deny the material allegations of a pleading operates so as to impliedly admit the allegations, a default does not automatically trigger judgment for, or the relief requested by, the pleader. The pleader is entitled to an entry of judgment or a grant of relief as a function of the nonresponsive

sale so that potential buyers could understand the encumbrances on the property.

party's default and the attendant implied admission *only when the allegations in the well pleaded filing are sufficient on their face to make out a claim for judgment or relief. . . .* [T]he question as to whether a default requires judgment in favor of the pleader is to be determined by reference to the sufficiency of the pleading itself." (Citations omitted; emphasis added.) *Commissioner of Social Services* v. *Smith*, 265 Conn. 723, 736–37, 830 A.2d 228 (2003); cf. *Mountview Plaza Associates, Inc.* v. *World Wide Pet Supply, Inc.*, 76 Conn. App. 627, 634, 820 A.2d 1105 (2003) (reversing trial court's judgment in favor of defaulted defendants where "the material allegations of the complaint satisf[ied] the threshold legal test for piercing the corporate veil"). Put another way, "in both equitable and legal actions, the plaintiff must establish his right to relief to the court's satisfaction, even though some issues may have been laid at rest by the default." (Internal quotation marks omitted.) *Ratner* v. *Willametz*, 9 Conn. App. 565, 576, 520 A.2d 621 (1987); cf. R. Bollier et al., Stephenson's Connecticut Civil Procedure (3d Ed. 1997) § 43, p. 135 ("[t]he legal conclusion pleaded [in a complaint] is disregarded if inconsistent with or unsupported by the facts alleged").[8]

Here, the plaintiff's assertion of priority over Chase requires that we review the allegations in the complaint to determine whether they make out a valid claim for the relief requested. See *Tang* v. *Bou-Fakhreddine*, 75 Conn. App. 334, 338, 815 A.2d 1276 (2003). Our review of the legal sufficiency of pleadings is plenary. Id., 337.

---

[8] Additionally, following a default judgment, "[a]n appellate court . . . may examine the allegations of a complaint to ascertain whether they are sufficient on their face to establish a valid claim for the relief requested." (Internal quotation marks omitted.) *Argentinis* v. *Fortuna*, 134 Conn. App. 538, 546, 39 A.3d 1207 (2012); see also id., 550–51 (reversing award of attorney's fees following defendant's default where underlying statute did not provide for such damages).

According to the complaint, the plaintiff obtained a prejudgment remedy of attachment against the subject property in the civil action between her and Morneau, which was recorded on the land records of the town of Portland on May 28, 2004. This prejudgment attachment, the complaint alleges, relates back to the filing of the notice of constructive trust. The complaint further states that on February 6, 2006, the plaintiff obtained a judgment against Morneau in the amount of $63,061, plus interest. Thereafter, the plaintiff secured a judgment lien against the property, which was recorded on February 15, 2006. The complaint states that the "judgment lien relates back to the aforementioned [n]otice [r]e: [c]onstructive [t]rust 1/2 [o]wnership dated June 19, 2003 and recorded July 17, 2003, in . . . the Portland [l]and [r]ecords." The ultimate effect of these allegations, according to the complaint, is that Chase's interest, as the assignee of a mortgage recorded on August 22, 2003, is subordinate to the plaintiff's interest, which accrued approximately a month earlier.

These factual allegations do not support such a conclusion. There is no legal basis for relating either the judgment lien or the prejudgment attachment back to the filing of the notice of constructive trust. Pursuant to General Statutes § 52-380a (b), "[f]rom the time of the recording of the judgment lien certificate, the money judgment shall be a lien on the judgment debtor's interest in the real property described. If, within four months of judgment, the lien is placed on real property which was previously attached in the action, the lien on that property shall hold from the date of attachment . . . ." Accordingly, here, the plaintiff's judgment lien related back to May 28, 2004, the date of the filing of the prejudgment attachment, as alleged in the complaint. See *Farmers & Mechanics Savings Bank* v. *Garofalo*, 219 Conn. 810, 814, 595 A.2d 341 (1991). From that date forward, the plaintiff's lien would enjoy priority over

any subsequent claim to the attached property. See *Mac's Car City, Inc.* v. *DiLoreto*, 238 Conn. 172, 179–80, 679 A.2d 340 (1996) ("[a]s a prior lien, the attachment burdens the debtor by limiting the debtor's ability thereafter to sell or mortgage the attached property").

The complaint, however, conjures a second relation back effect, which has no basis in our laws—relation back from the prejudgment attachment to an earlier filing on the land records—and the plaintiff argues that the trial court was required to accept the validity of this position as a consequence of Chase's default. But courts are not empowered to expand the reach of the attachment remedy. "Because attachments did not exist at common law and because tying up a debtor's property prior to litigation of the validity of the creditor's claim is a harsh remedy . . . we have construed our attachment statutes strictly." *Farmers & Mechanics Savings Bank* v. *Garofalo*, supra, 219 Conn. 814. Indeed, our Supreme Court has declined efforts to expand the scope of the relation back provision of § 52-380a (b). In *Mac's Car City, Inc.* v. *DiLoreto*, supra, 238 Conn. 179–80, the court rejected the argument that a pending appeal could extend the four month time period within which a judgment creditor must obtain a judgment lien to gain the advantage of relating back to the date of the prejudgment attachment. The court held that "[s]trict construction of the four month filing period for a judgment lien to enforce a prejudgment attachment is . . . appropriate because these statutes provide a creditor with a powerful collection tool." Id., 179. Moreover, it has been observed that the procedures prescribed by the attachment statutes serve to protect the interests of both the creditor *and the debtor*. Id.

The plaintiff's position is also problematic because it would afford her the benefits of prejudgment attachment without the requisite court finding that there is probable cause to support the underlying cause of

action. See *Beers* v. *Westport Bank & Trust*, 50 Conn. App. 671, 676, 719 A.2d 58 ("[a] court must first find probable cause before a prejudgment remedy of attachment of real property may issue"), cert. denied, 247 Conn. 940, 723 A.2d 317 (1998). Our attachment precedents simply do not permit bending the rules in the way the complaint proposes; thus, the court properly rejected the plaintiff's attempt to take advantage of § 52-380a (b) twice in determining the priorities of the liens.[9]

In summary, the plaintiff's complaint alleged that her judgment lien related back not only to the prejudgment attachment, but also to an earlier filing on the land records. Chase's default did not obligate the court to accept this incorrect legal position in determining the priority order of the parties' lien interests.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] In the hearing on the motion to determine priorities, the plaintiff argued that in the civil action that she had brought against Morneau, the trial court found that the April 3, 2003 letter from Morneau, which was filed on the land records, constituted an agreement between the parties that they would share equally in the equity of the subject property. This finding, the plaintiff asserted, created a nexus between the judgment lien and the notice of constructive trust, which justified relation back to July 17, 2003. Although the documents filed with the notice of constructive trust formed the basis of the breach of contract action and subsequent money judgment in favor of the plaintiff, this is not a ground for relating the judgment lien back to the earlier filing. The notice of constructive trust was not an attachment of real estate to secure a future money judgment; see General Statutes § 52-285; and the trial court's findings did not convert it into one.