******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARIANNE MIANG PEREZ *v.* ANTONIETTA
CARLEVARO
(AC 36823)

Sheldon, Mullins and Schaller, Js.

*Argued March 10—officially released July 28, 2015*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Povodator, J.)

*Patrick J. McHugh*, for the appellant (defendant).

*Scott M. Harrington*, for the appellee (plaintiff).

*Opinion*

SHELDON, J. In this breach of contract action, the defendant, Antonietta Carlevaro, appeals from the judgment, rendered after default,[1] in favor of the plaintiff, Marianne Miang Perez, under which the plaintiff was awarded damages in the amount of $14,170.58, plus prejudgment interest on that amount at the rate of 6 percent per annum, and attorney's fees in the amount of $62,162. On appeal, the defendant challenges the court's award of attorney's fees[2] on the ground that the contractual provision under which the trial court awarded such fees did not provide for such an award.[3] We agree with the defendant, and thus reverse, in part, the judgment of the trial court.

In or around December of 2009, the plaintiff and the defendant formed a business, Antomari, LLC, for the purpose of selling handmade Italian jewelry and related products. Each party contributed 50 percent of the capital to fund the business, and each thus owned a 50 percent interest in the business. A dispute arose between the parties in or around October, 2010. As a result of the dispute, the parties agreed that the plaintiff would withdraw from the business in exchange for a payment representing 50 percent of the value of the business' assets. On December 10, 2010, the defendant sent the plaintiff an e-mail, attached to which was a document entitled, "Agreement Withdrawal and Termination of Member's Interest in Antomari LLC" (withdrawal agreement). The withdrawal agreement provided, inter alia, that the defendant would pay the plaintiff $14,170.58 for her share of the business. In the December 10, 2010, e-mail to the plaintiff, the defendant stated, "Please see attached a copy of the agreement duly signed. The original with the check has been sent separately by mail." The plaintiff's withdrawal from the business was never effectuated.

The plaintiff filed this action, alleging breach of the withdrawal agreement, unjust enrichment and conversion. She also sought an accounting of the business and indemnification, pursuant to the withdrawal agreement, for damages and attorney's fees she allegedly incurred due to the defendant's breach of the withdrawal agreement. The defendant thereafter filed an answer, in which she essentially denied the allegations of the plaintiff's complaint and asserted that the withdrawal agreement relied upon by the plaintiff was not valid. The defendant also filed a two count counterclaim, in which she sought damages for loss of profits, loss of income and loss of value of the business. The plaintiff filed an answer, in which she essentially denied the allegations of the defendant's counterclaim and asserted several special defenses.[4] The defendant denied each of the plaintiff's special defenses to the counterclaim. The pleadings were closed on June 12, 2012.

On March 15, 2013, the plaintiff filed a motion for an order requiring the defendant to comply with certain discovery requests. On July 16, 2013, the court granted that motion and ordered the defendant to comply with the subject discovery requests no later than September 13, 2013. The court ordered that, if the defendant failed to comply with its order, a default would be entered against her upon the filing of a motion for default in which the plaintiff attested to the defendant's noncompliance. On September 17, 2013, the plaintiff filed a motion for default with respect to her complaint, and for nonsuit with respect to the defendant's counterclaim, in which she attested to the defendant's noncompliance with the court's July 16, 2013 order. The court granted the defendant's motion on September 27, 2013.

The plaintiff thereafter claimed this case for a hearing in damages. The case was first scheduled for a hearing in damages on November 14, 2013, and then again on December 19, 2013. After the defendant had moved to open the default judgment, on December 5, 2013, the defendant filed a motion for continuance of the hearing in damages, which the court granted on December 17, 2013, further ordering that: "The hearing in damages shall be continued until the week of January 6, 2014, if the motion to open default is denied. If the motion to open default is granted, the court trial shall proceed the week of January 6, 2014." The trial was thereafter continued, again at the request of the defendant, to March 12, 2014. The September 27, 2013 order entering default and nonsuit against the defendant was never opened. The defendant failed to appear for trial on March 12, 2014, whereupon the court entered another default against her as to the plaintiff's complaint, and entered a judgment of nonsuit against her on her counterclaim. The court then proceeded with a hearing in damages in the absence of the defendant. At the hearing, the plaintiff finally submitted affirmative proof of her claims.[5]

On April 16, 2014, the court filed a memorandum of decision, in which it ruled in favor of the plaintiff on her claim that the defendant had breached the withdrawal agreement. On that basis, the court awarded the plaintiff $14,170.58 in compensatory damages, as well as prejudgment interest at a rate of 6 percent per annum on that award. The court also found in favor of the plaintiff on her claim for unjust enrichment, but declined to award damages on that claim because to do so would be duplicative of the damages awarded for breach of the withdrawal agreement. The court found that the plaintiff was entitled to an accounting with respect to the parties' business, but determined that "there would be significant economic waste if the court were to order any actual relief [on that claim]." The court rejected the plaintiff's claim for conversion as legally insufficient. The court also awarded the plaintiff attorney's

fees in the amount of $62,162 pursuant to her claim for indemnification. This appeal followed.

The defendant's principal claim on appeal is that the trial court erred in awarding the plaintiff attorney's fees pursuant to the indemnification provision of the withdrawal agreement.[6] The defendant claims that that provision does not apply to claims between the parties, but is limited to claims arising from the defendant's conduct of the business, not a breach of the withdrawal agreement. We agree.

It is well established that the determination as to whether language of a contract is plain and unambiguous "is a question of law subject to plenary review." *Cruz* v. *Visual Perceptions, LLC*, 311 Conn. 93, 101, 84 A.3d 828 (2014). If, however, the contractual language is found to be ambiguous, "[s]uch ambiguity permits the trial court's consideration of extrinsic evidence as to the conduct of the parties. . . . [T]he trial court's interpretation of a contract, being a determination of the parties' intent, is a question of fact that is subject to reversal on appeal only if it is clearly erroneous." (Citation omitted; internal quotation marks omitted.) *19 Perry Street, LLC* v. *Unionville Water Co.*, 294 Conn. 611, 623, 987 A.2d 1009 (2010). Accordingly, our review is twofold. First, we must determine de novo whether the contractual language is ambiguous. If we conclude that it is, we must determine whether the trial court's factual findings are clearly erroneous.

"In determining whether a contract is ambiguous, the words of the contract must be given their natural and ordinary meaning. . . . A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . .

"In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Citations omitted; internal quotation marks omitted.) *Cruz* v. *Visual Perceptions, LLC*, supra, 311 Conn. 102–103. With those principles in mind, we turn to the contractual language at issue in this appeal.

In the fifth count of her complaint, the plaintiff sought indemnification from the defendant. The trial court

awarded the plaintiff attorney's fees, pursuant to the indemnification provision of the withdrawal agreement. The indemnification provision provided as follows: "[The defendant] agrees to indemnify and keep [the plaintiff] harmless from any costs, liabilities, expenses and damages arising from [the defendant's] conduct of the business." The plain language of that provision, particularly when read in the context of the entire document, the sole purpose of which was to terminate the business relationship between the parties, does not afford either party the right to attorney's fees at all, much less for potentially actionable conduct by each other in connection with the withdrawal agreement itself.

First, the provision does not make any mention whatsoever of attorney's fees. Second, our Supreme Court has held that "a claim for indemnity and a claim for one's first party losses are not one and the same. . . . [A]n action for indemnification is one in which one party seeks reimbursement from another party for losses incurred in connection with the first party's liability to a third party." *Amoco Oil Co.* v. *Liberty Auto & Electric Co.*, 262 Conn. 142, 148, 810 A.2d 259 (2002). The plaintiff's claim here is not such a claim. Third, and finally, the indemnification language provides for recovery of losses incurred by the plaintiff "arising from [the defendant's] *conduct of the business*." (Emphasis added.) That clear and unambiguous language does not include the conduct by either party in the termination of their business relationship.

Indeed, the trial court acknowledged in its memorandum of decision: "There is no provision, either in the original agreement between the parties that created the limited liability company at the heart of this matter . . . nor anything in the withdrawal agreement . . . specifically authorizing recovery of attorney's fees in the event of a breach of either agreement." The trial court, nevertheless, determined that, because the defendant had been defaulted, the plaintiff's claim for indemnification was deemed admitted, and, thus, it awarded the plaintiff attorney's fees as she had requested.

In her claim for indemnification, the plaintiff recited the indemnification language of the withdrawal agreement and alleged: "As a result of the defendant's conduct of the business, including, but not limited to, her failure to comply with the withdrawal agreement, the plaintiff has suffered damages and was forced to incur attorney's fees and other related expenses to recover for those damages." The trial court deemed that allegation admitted, based upon the default of the defendant, and awarded the plaintiff attorney's fees pursuant to the recited indemnification language.

We do not quarrel with the trial court's invocation of our established law that, when a defendant has been defaulted, the material facts that constitute a cause of

action are deemed admitted and the liability of the defendant is thus conclusively determined. The flaw in the trial court's analysis is that it presumed the legal sufficiency of the plaintiff's claim for attorney's fees pursuant to the indemnification provision of the withdrawal agreement.

"A default admits the material facts that constitute a cause of action . . . and entry of default, when appropriately made, conclusively determines the liability of a defendant. . . . If the allegations of the plaintiff's complaint are sufficient on their face to make out a valid claim for the relief requested, the plaintiff, on the entry of a default against the defendant, need not offer evidence to support those allegations. . . .

"Although the failure of a party to deny the material allegations of a pleading operates so as to impliedly admit the allegations, a default does not automatically trigger judgment for, or the relief requested by, the pleader. The pleader is entitled to an entry of judgment or a grant of relief as a function of the nonresponsive party's default and the attendant implied admission *only when the allegations in the well pleaded filing are sufficient on their face to make out a claim for judgment or relief*. . . . [T]he question as to whether a default requires judgment in favor of the pleader is to be determined by reference to the sufficiency of the pleading itself. . . . Put another way, in both equitable and legal actions, the plaintiff must establish his right to relief to the court's satisfaction, even though some issues may have been laid at rest by the default. . . . [See] R. Bollier et al., Stephenson's Connecticut Civil Procedure (3d Ed. 1997) § 43, p. 135 ([t]he legal conclusion pleaded [in a complaint] is disregarded if inconsistent with or unsupported by the facts alleged)." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Moran* v. *Morneau*, 140 Conn. App. 219, 225–26, 57 A.3d 872 (2013). As a result, although "[a] default may settle many issues . . . it does not operate to insulate a mistaken legal proposition from judicial review." Id., 225.

Here, the defendant's default did not obligate the court to accept the plaintiff's incorrect legal position by awarding her attorney's fees under the terms of a contract that unambiguously did not provide for such relief. The trial court's award of attorney's fees was thus improper.

The judgment is reversed in part and the case is remanded to the trial court with direction to render judgment in favor of the defendant on the plaintiff's claim for indemnification. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The defendant does not argue on appeal that she was improperly defaulted.

[2] The defendant concedes that the plaintiff was entitled to compensatory

damages on her breach of contract claim, but argues that the trial court erred in "immediately proceeding on a hearing in damages on the same day [that] default and nonsuit were entered, taking evidence on liability and making findings of credibility concerning the plaintiff's testimony, which was not subject to cross-examination, thereby depriving the defendant of the ability to provide written notice of intent to contradict allegations of the amount of damages as provided for by § 17-33 (c) of the Practice Book . . . ." In so arguing, the defendant ignores the fact that, in addition to being defaulted for failing to appear at trial, she had already been defaulted prior to trial for failure to comply with discovery requests. The defendant's claim in this regard is, thus, unavailing.

[3] The defendant also suggests that the court should have applied a lower interest rate than 6 percent per annum "within the context of historically depressed interest rates in the market." The defendant has not adequately briefed this argument, and, thus, we decline to review it. See *Clelford* v. *Bristol*, 150 Conn. App. 229, 233, 90 A.3d 998 (2014).

[4] The special defenses are not relevant to this appeal.

[5] There is no claim that the defendant was unaware of or unable to attend the March 12, 2014 trial.

[6] The defendant also claims that the agreement was unenforceable because it was simply a proposal that was never finalized and that the proposal had expired. Because we conclude herein that the language of the agreement did not provide for an award of attorney's fees in this case, we need not address the enforceability of the agreement or the related threshold question of whether the defendant has the right to raise such a claim in light of her failure to obtain an order setting aside the default.